# CASES ARGUED AND DECIDED

### IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

# OCTOBER TERM, 1877.

## E. VIRDEN *v.* E. J. BOWERS.

1. TAX SALES. *Prerequisites.*
   The facts prerequisite to the power of a tax-collector to sell land for taxes are: a legal assessment of the taxes, default in the payment thereof, and the possession by the collector of the assessment-roll, or a copy thereof.

2. TAX DEED. *Prima-facie evidence.*
   A tax-collector's deed is *prima-facie* evidence that all things essential to the collector's power to sell the land conveyed existed at the time of the sale, and upon the party impeaching the sale rests the burden of overthrowing this presumption.

3. TAX ASSESSMENT. *Proceedings before sale.*
   A legal assessment of property makes the owner debtor to the state; the assessment, when approved by the Board of Supervisors, upon due notice to those interested and opportunity offered them to have mistakes corrected, is like a judgment, and the assessment-roll, or a copy thereof, in the hands of the tax-collector serves as an execution, and empowers him to distrain and sell if default be made in the payment of the taxes due.

4. TAX DEED. *Section 8 of article 12 of the constitution construed.*
   Section 8 of article 12 of the state Constitution is imperative that the courts shall regard a title by tax-collector's deed with the same favor and indulgence as a title by a sheriff's deed upon sale under execution.

5. TAX SALES. *Errors in advertisement of land.*
   No defect or error in the advertisement of a particular tract of land by the tax-collector will, of itself, invalidate the sale thereof.

6. TAX SALES. *Failure to sell personalty first. Effect.*

A tax sale of land cannot be resisted on the ground that the tax-debtor had personal property in the county out of which the taxes might have been made. The statute prescribes the order in which the two classes of property are to be sold, but its observance is not a prerequisite to the power of sale in the collector.

7. SAME. *Failure to make demand of resident on land.*

A sale of land for taxes cannot be attacked for the failure of the tax-collector to make a personal demand of the settler residing on the land for the payment of the taxes due thereon, or by written application left at his residence. The provision of section 1697 of the Code, requiring this demand, is merely directory.

8. TAX DEED. *Section 1700 of the code construed. Rules of construction applied to tax sales.*

Section 1700 of the Code of 1871, after prescribing the form of a tax deed, provides: "No such conveyance shall be invalidated in any court of this state except by proof that the taxes for which the land was sold had been paid before the sale; and the tax-collector's conveyance to individuals, and list of lands sold to the state, shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid." The first clause above quoted, if construed in its broadest sense, would be unconstitutional, as, under that construction, it would validate tax sales made privately and without proper assessment. But the meaning of that clause is limited by the next, which makes such conveyances *prima-facie* valid only, and leaves them subject to be avoided by proof that the assessment was illegal, or that other essential requisites to a valid sale were not observed. What these requisites are must be determined by judicial construction, but the Constitution requires that the same liberal principles of construction applied in sales under execution shall be applied to tax sales.

9. SAME. *Legislative power. Statutes construed.*

The Legislature has the power to provide that land legally assessed for taxes shall, in default of payment, be sold at a fixed time and place, and in a certain manner, and that a deed made to the purchaser shall not be invalidated except by proof that the taxes for which the land was sold had been paid before sale; and, further, that such deed shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid. And this is what has been done in the Code of 1871, secs. 1691, 1697, 1700. *Per* CAMPBELL, J.

ERROR to the Circuit Court of Madison County.

HON. A. G. MAYERS, Judge, specially presiding, by exchange with Hon. S. S. Calhoon.

E. J. Bowers, the defendant in error, brought an action of ejectment against William Chambers for the possession of a

certain tract of land.   Before the trial of the case, E. Virden, the plaintiff in error, upon his application as landlord, was substituted by the court for Chambers, and permitted to defend the action.   The plaintiff below offered in evidence the tax-collector's deed conveying to him the land in controversy ; to the admission of which the defendant objected (1) because the evidence did not show that the land sued for was assessed to M. L. Dinkins, to whom the deed states the taxes were assessed, as reputed owner of the land conveyed ; (2) there was no evidence that the notice required by law was served on the settler on the land, nor of demand made to the proper person for the taxes ; (3) there was no evidence that the land was advertised and sold according to law ; (4) there was no evidence that the smallest subdivision of the land was first offered for sale by the tax-collector ; (5) it was not shown that sufficient personal property belonging to Dinkins could not be found upon which to levy and make the amount of taxes ; (6) it was not shown that sufficient personal property belonging to E. Virden could not be found upon which to levy and make the taxes.   Evidence was introduced by the defendant showing that he (E. Virden) was the real owner of the land, and that M. L. Dinkins was his tenant at the time of the sale by the tax-collector. The defendant also offered proof to show that in the publication of notice of sales for delinquent taxes the land in controversy was twice advertised to be sold on January 7th, which was Sunday, and once to be sold on the first Monday in January, but was in fact sold on January 8th.   This proof the court excluded from the jury.   The action of the court below in admitting the tax deed and excluding proof of irregularity in the advertisement, together with many other rulings not considered by this court, is assigned for error.

   *T. J. & F. A. R. Wharton*, for the plaintiff in error.

   The position relied upon and the construction put upon section 1700, Code 1871, by counsel for defendant in error, and which received the sanction of the court below, renders it

next to an impossibility to make a successful defense against a tax title in any case, or under any circumstances.

We concede that there is a very considerable modification effected by that section of the rules of law which have been applied to sales for taxes, and titles acquired by purchasing at such sales, under the provisions of the revenue laws in this state. Still, we insist that some of the rules are fundamental and yet in force, and which the Legislature, within the limits of its constitutional powers, cannot repeal. It had always heretofore been held that the power to sell lands delinquent for taxes, so as to vest title in the purchaser at such sales, was a naked statutory power; and that it was essential that it should appear affirmatively that all of the requirements of the law touching the assessment, listing, return of assessment-rolls, approval by the Board of Police, advertisement and sale, were strictly observed. The directions of the revenue laws in that regard were mandatory, not directory merely.

The power to seize and sell a man's lands for non-payment of taxes, by *ex-parte* proceedings, in the most liberal view of it, is a very summary and arbitrary one, resulting from the principle of self-preservation, as applicable to communities and governments as to individuals. In *Styles v. Wier*, 26 Miss. 189, the court said: "It has been so often decided that in sales of this kind every important feature of the law must be observed to uphold the sale, that we deem it unnecessary even to cite authority." Sales of land for taxes rest on different principles from sales under judgments and executions. In the latter, irregularity of a sheriff in giving notice of the sale will not vitiate the title of a *bona-fide* purchase. Such title will not be affected if no notice of such sale is given, or if it is given in a different manner from that prescribed by statute, where the purchaser had no knowledge of misconduct by the sheriff. 10 Smed. & M. 246. The strictness applied to sales of land for taxes was illustrated in *Huntington v. Brantley*, 33 Miss. 451. The 1st section of the Revenue Act of 1844 re-

quired collectors to furnish the auditor, by July 1st in every year, a certified copy of all taxes assessed against lands of nonresidents of the county. It was held in the above case that a sale for taxes under that act was void if that requirement was not complied with. All the authorities agree that the taxing power is a high prerogative, and one not to be exercised in doubtful cases. It is a naked power, operating on an estate in which the officer executing it has no interest and no control over, except what the law has explicitly delegated to him. It is a condition precedent to passing title at such sale that all the proceedings of all the officers who have anything to do with the listing and valuation of the land, the levy and collection of the tax, the advertisement and sale of the property, the return, filing a record of the proceedings, whether the acts are to be performed before or after the sale, must be in strict compliance with the statute. Blackw. on Tax Titles, 34; 18 Vt. 472. In 4 Smedes and Marshall, page 628, the court said : " So strict, indeed, are the decisions in reference to this class of sales that it has been said a tax deed is, *prima facie*, void." Purchasers at such sales must, at the risk of getting no title, carefully examine and see that every, even the most minute, direction of the statute is complied with. The purchaser must affirmatively show such compliance. The Revenue Act of 1850, section 4, is almost identical with section 1700, Code 1871. Said section provides that the list deposited with the auditor shall vest title in the state, and only be impeachable by proof that the taxes for non-payment of which the lands were sold were paid before the return of the list. In *Griffin* v. *Mixon*, 38 Miss. 424, this act was held to be unconstitutional, and for reasons as applicable now, and to the said section 1700, as to said act of 1850.

We insist that said section 1700 is palpably unconstitutional in the very particular, and for the same reasons, that said act of 1850 was declared so in the above case. It is the condemnation, seizure, and sale of a man's property without due course of law. In that regard it (his property) is placed in the same

category and in the same protection that his life and liberty are ; and, in the light of the construction put upon those words by text-writers and judges, would it not do violence to the spirit of the Constitution to hold that the Legislature did not exceed its power when it enacted, as in said section 1700, that the tax deed should not be invalidated " except by proof that the taxes for which said lands were sold had been paid before sale ? " Can it be seriously contended that if the purchaser brings ejectment upon his tax deed against the owner of the land, and the latter proves non-performance of every duty required of the officers charged with the execution of the revenue law, in assessing, listing, and returning lists, and in advertising the sale, and should also show that he (the landowner) had abundant personal property to have paid his taxes, that this would not invalidate the tax sale, and that no proof, except payment of the taxes, as evidenced by the receipt of the collector, prior to the sale, would invalidate it?

We concede that the Legislature intended by section 1700 to get around, if it were possible to do so, the rules which had been applied to tax titles in the text-books and opinions of the courts, on the idea that men were encouraged not to pay their taxes, and to give no attention to the sale of their lands for taxes, because it was next to an impossibility to uphold a tax title. If the previous legislation and decisions of the courts erred in that direction, much more has the Legislature erred in the opposite direction by section 1700 of the Code. We again invoke the rules laid down in *Griffin* v. *Mixon*, *supra*, as testing the constitutionality of said section 1700.

Section 8 of the general provisions of the Constitution is relied upon by the appellees as favoring the constitutionality of said section 1700. Said section 8 is as follows : " The Legislature, at its first session, shall provide by law for the sale of all delinquent tax lands. The courts shall apply the same liberal principles in favor of such titles as in sales by execution." Let us see how liberal are the rules which are applied in the construction of titles acquired at sale under executions.

Blackwell (p. 75) says that the rule of construction is that he who affirms the existence of a material fact must prove its existence, and the opposite party is seldom, if ever, required to prove a negative. Where a party sets up a title to land under a sheriff's sale, it is incumbent on him to show a judgment rendered by a court of competent jurisdiction, and a valid execution issued thereon, as well as to produce the sheriff's deed; for it is only in satisfaction of judgments that the law subjecting land to the payment of debts authorizes them to be sold. The sheriff derives his authority to sell from the judgment and execution, and not by reason of any interest he has in the property. Not to require the production of the judgment is to say that a man's estate may be divested without the judgment of his peers or the law of the land. It is a principle of natural justice, never to be lost sight of, that no person should be deprived of his property or other rights without notice and an opportunity of defending them. Not to require the execution to be produced is equivalent to deciding that the judgment, *per se*, divests the owner of his title. Such is not the law. The protection of property against rapacity and fraud would be slight under the operation of such a principle. To afford this very protection the rule of law was established that the existence of the execution, and the judgment upon which its rests, are matters to be proved affirmatively by the claimant under a sheriff's deed, by evidence *aliunde*. The judgment is the foundation of his right to subject the land to the payment of his debt, and the execution constitutes the authority of the sheriff to sell. It would seem but reasonable that, as a record must be made and preserved of every step which is a prerequisite to invest a purchaser at tax sale with the title to the land sold, which record must show affirmatively on its face compliance with those prerequisites, the party whose title depends upon such compliance should be the one upon whom the *onus* would rest to establish such compliance, by producing the record, rather than upon the owner of the land to prove a negative. A party setting

up a title, must furnish the evidence to support it. If the validity of a deed depends upon an act or a fact *in pais*, he who claims under the deed is as much bound to prove that act or fact as he would be to prove any matter of record on which its validity might depend.. It forms a part of his title. It is a link in the chain which is essential to its continuity, and which it is incumbent on him to prove. This is so because it is easy for the purchaser to prove these facts, if they exist. In many cases the negative would not admit of proof. Section 1700 applies much more "liberal principles" (not the same liberal principles) to tax sales than to sales under execution. Section 8 of the Constitution, already cited, was designed to put purchasers at tax sales and those at execution sales on equally liberal grounds as to titles acquired. Said section 8 enforces a twofold duty : one on the Legislature, to provide by law for the sale of all delinquent tax lands ; the other upon the courts, to " apply the same liberal principles in favor of," etc. We submit, in conclusion, that the court below should have sustained the objections made to the admission in evidence of the tax deed to the defendant in error, and that for its refusal to do so the judgment should be reversed.

*T. J. Wharton* argued the case orally.

*Harris & George,* on the same side.

1. The court erred in refusing to admit evidence that the advertisement of notice of the sale was wrong. But if the provisions of section 1700, in the Code of 1871, be valid, then no irregularity or default of the officer will invalidate a sale, provided only that the taxes had not been paid. The Constitution provides that, " no person shall be deprived of life, liberty, or property, except by due process of law." The due process of law as applied to property means, not only that a man shall not be deprived of his property except in pursuance of a law then in existence, but also that the Legislature shall not have the power to enact a law which dispenses with the observance of certain rules which have ever been regarded as essential to the protection of property. One of these funda-

mental. rules is that which requires notice, either actual or constructive, to be given to the possessor of property of the proceeding which is to result in depriving him of it.

There are two great classes of proceedings which affect property — one being suits *in personam;* the other, proceedings *in rem.* In the first class there can be no binding decree or judgment under which a sale of the defendant's property can be made, except upon due notice to him. In the latter class the notice is given to the world by a seizure of the thing itself. The personal notice may be either actual or constructive; but if constructive, and not accompanied by a seizure of the thing itself, it must be such notice as affords the party a reasonable opportunity of receiving it actually.

2. The law requires that demand shall be made of the tenant, and notice given of the amount of taxes due. The Legislature has prescribed certain things to be done as prerequisite to the power of the tax-collector to sell lands. It has expressly prohibited him to sell the land until this demand is made and notice given. The language of the act is: "*provided* that no lands shall be sold for taxes unless the tax-collector shall first have" made demand and given notice. Can the Legislature enact that a sale made without any power, without a compliance with law in any respect, shall be valid?

Suppose section 1700 of the Code be valid; then it follows: (1) that no assessment is necessary to a sale; (2) that no illegality in any part of the tax will vitiate the sale; (3) that no notice of the sale shall be given to the public; (4) that no notice shall be given to the owner; (5) that a sale would be good when from want of notice there were no bidders. In tax sales there is no previous trial or judgment had on due notice; and hence, unless the provision of the Constitution above quoted has no application whatever to tax sales, there must be notice of some sort given of the sale in proceedings preliminary to it; otherwise, we have a proceeding which divests a man of his estate without trial, judgment, or notice even, of any kind. The theory on which tax sales are maintained is that the statu-

tory power must be strictly complied with, and that the owner, in a suit to test the validity of the title, can test the preliminary proceedings and defeat them, unless the law has been thus complied with.

*A. H. Handy*, for the defendant in error.

1. The decision of the court below — in overruling the preliminary objections of the plaintiff. in error to reading the deed in evidence, in behalf of the plaintiff below — was that the deed was *prima-facie* evidence of the performance of the acts required to be done in order to render the sale to the plaintiff valid.

Conceding this — for the present, and merely for the sake of the argument — to be a correct view of the statute, it is clear that there is no error in the rulings referred to.

The words of the section are that the collector's deed " shall vest in the purchaser a perfect title to the land sold for taxes, subject to the right of redemption ; and no such conveyance shall be invalidated in any court of this state except by the proof that the taxes for which said land was sold had been paid before sale ; and the tax-collector's conveyance to, individuals, and lists of lands sold to the state, shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid." Sec. 1700.

This deed was in exact conformity to this statute, and has been so held in a previous decision of this court, in this same case, at the last term.

It appears, therefore, impossible to maintain that the rulings in question were erroneous, even if that statute gave to the deed merely the effect of *prima-facie* evidence of the performance of the preliminary acts required to make the sale valid — which is the view most favorable to the plaintiff in error. And if, on the contrary, the deed was conclusive evidence of these facts by force of the statute, the rulings were to the prejudice of the defendant in error, and favorable' to the plaintiff in error, who cannot, therefore, complain of that error ; and, in that view, the judgment, on the whole record,

is correct, and cannot be reversed. The statute is not susceptible of any other than one of these constructions, and, whether one or the other be adopted, there is obviously no error to the prejudice of the plaintiff in error of which he can complain.

. 2. In either view of the force and effect of the deed in this case, under this statute — whether *primâ facie*, as it was held by the court below, or *conclusive* as to preliminary acts, as we contend — the statute is constitutional.

If it be regarded as making the deed *prima-facie* evidence, as was held by the court below, it is a perfectly settled rule, here and elsewhere, that the Legislature has power to change the rules as to the burden of proof, and to fix rules of evidence and to prescribe their effect. *Belcher* v. *Mhoon*, 47 Miss. 620; *Pillow* v. *Roberts*, 13 How. 476, 477; *Bank of Kentucky* v. *Coffman*, 40 Miss. 29.

And this power exists so as to make a tax deed *prima-facie* evidence that all the proceedings relative to the sale were regular, and that the purchaser had acquired a complete title under it. Cooley's Const. Lim., 2d ed., 368, and cases there cited; *Griffin* v. *Dogan*, 48 Miss. 19; *Meeks* v. *Whatley*, 48. Miss. 340.

And as to the validity of such legislative rules making such deeds *prima-facie* evidence, there cannot be a serious question at the present day.

But as to the *conclusive* force of the deed, the policy of the Legislature manifestly was to prevent the difficulties which had so greatly embarrassed the finances, and impaired the credit, of the state; and, to that end, to make taxes a charge upon the *land taxed in rem*, regardless of erroneous assessments in the names of improper persons, or irregularities and errors in the times and mode of sales, etc., and thereby give confidence to persons who might advance their money in the purchase of lands sold for delinquent taxes, and assure titles so acquired against irregularities and informalities in the pro-

·ceedings, and to render such titles unimpeachable except by proof that the taxes had been paid before sale. Code, secs. 1665, 1667, 1700.

These rules, though stringent, were found to be necessary ·to maintain the machinery of government in the state and secure public credit; and they are just as proper under the principle that a private inconvenience in a particular matter must yield to the public good. *Salus reipublicæ suprema·lex.*

Regarding such a proceeding as one *in rem* — as was plainly ·enacted by the Legislature — there was no hardship to the land-owner in it, inasmuch as he was bound to know that the land was bound for the taxes, and it was his duty to go for- ·ward and pay them before sale. Public notice is always given by the tax-collector to that end, which is virtually a proceed- ·ing *in·rem* as to the land, and is equivalent, in law, to a seiz- ure of the land. Besides, the owner is bound to take notice ·that, by the general provisions of law, the taxes are payable, ·and must be paid by·him at the time fixed·by·law.· If he fail to discharge that duty, he cannot justly ·complain· that the state has protected herself and enforced her lien by a sale of ·the property; much less should he be permitted to impeach ·the title of a purchaser at such sale who has purchased under the immunities created by law for his security.·

Hence there is no injustice in confining his· defense, in an ·action by the purchaser to recover the land from him, to the payment of taxes before the sale. Surely there is no principle ·of abstract justice which should allow him, after such default, to call in question the regularity of the assessments, notices, advertisements, etc., which he had the full opportunity to at- ·tend to, and should have attended to, before the sale. He ·surely cannot be permitted to take·advantage ·of his own ·wrong and of the violation of a high duty to the state.

It is insisted by·adverse counsel that the acts required of ·the tax-collector by section 1697, as to advertisement of de- ·linquent lands; non-possession by ·the land-owner, or settler,

of sufficient personal property to pay the taxes ; demand of
payment of taxes before sale ; and that the land was offered
for sale, first, by legal subdivisions, etc., were conditions prece-
dent by the statute, and necessary to be proved on the trial,
before the tax-collector's deed could have the effect to convey
the title to the purchaser.

But this position is plainly in violation of the last clause of
section 1697, and of the express and positive rule declared in
section 1700, that the deed shall vest a perfect title in the pur-
chaser, not to be invalidated except by proof of payment of taxes.
before the sale — a provision which could have had no other
purpose than to avoid incidental errors and irregularities to the
purchaser's prejudice.    It is impossible to allow this objection
without doing violence to these clear provisions.    And this is
inadmissible, especially to the prejudice of an innocent pur-
chaser who has relied on these immunities for his security,
and for whose protection they were plainly intended.    Dwar.
on Stat. 121.

We submit that the proper construction of section 1700, in
connection with the last clause of section 1697, as to the pur-
chaser's deed at a tax-collector's sale, is that the deed confers a
perfect title, which can only be invalidated by proof of pay-
ment of taxes before sale ; and that the provision that it
shall be "prima-facie evidence that the assessment and sale,
and all proceedings of sale, were valid," has reference to
other aspects of the proceedings relative to the tax sale, and
not to the title of the purchaser secured by his deed, which
was fixed and made absolute by the preceding clause of the
section.

There is apparently, and at first view, a repugnancy in these
two provisions, if they both apply to the character and effect
of the deed, in all respects — the one rendering it conclusive
of a perfect title in the purchaser, except that previous pay-
ment of taxes may be shown ; and the other making it merely
prima-facie evidence of the performance of the prerequisites.

But it must be presumed that the two clauses had reference

to the matter in different respects.   The first, to the title of the
purchaser by means of the deed ; and the second, to the rights
and liabilities of others.   Thus, section 1697 requires of the
tax-collector the performance of various duties, in order to the
sale of lands for delinquent taxes ; and it is just to hold him
responsible to the land-owner for his neglect of those duties,
and that, in an action against him for default, the tax
deed should be merely *prima-facie* evidence of their proper
performance by him.   But the clause that the deed shall vest
in the purchaser a perfect title, and shall not be invalidated
except by proof of previous payment of taxes, is distinct, posi-
tive, and specific, and cannot properly be held as included in
the subsequent clause as to the effect and character of the deed
*prima facie*, but to apply to a different aspect of the subject-
matter.   For, otherwise, the two clauses, if applied to the deed
in the same respect, and to the same rights involved in it,
would be irreconcilably repugnant ; and such a construction is
not to be entertained if it can be reasonably avoided by
another.

The rule is that, when the words are repugnant, the meaning
may be ascertained *ex visceribus actus*, by reference to different
parts and clauses of the act (Dwar. on Stat. 210) ; and an in-
terpretation adopted which shall give effect to both, and
thereby prevent repugnancy (*ib.* 189), applying the parts in
different aspects, on the principle *reddendo singula singulis*, to
which they appear by the context most properly to relate (*ib.*
230), and thereby give effect to each clause of the act.

Another rule is that a thing expressly and plainly given in
particular is not " tolled " by general words in the same act.
Dwar. on Stat. 272.   This applies to the special and particu-
lar effect given to the deed as affecting the purchaser's title,
which cannot be held to be taken away or controlled by sub-
sequent general words ; but such general inconsistent words
must be referred to a different aspect of the general subject-
matter of the act.

The construction we here contend for, as to the different

aspects of the two clauses, reconciles their apparent inconsistency, and gives effect to each without impairing the force of either.    It is reasonable, and should be adopted, because it avoids irreconcilable repugnancy; and the principle has received the sanction of this court in *Griffin* v. *Dogan, supra,* in reference to an analogous provision of law in the statute of 1860, rendering the tax deed valid to all intents and purposes, and impeachable only for fraud or mistake in the assessment or sale, or on proof that the taxes had been paid.

In that case this court holds that "this statute does not relieve the assessor or collector from any of the before-mentioned duties enjoined by the law of 1857; but it does relieve the purchaser's title from all other informalities except such as arise out of fraud or mistake in the assessment or the sale, or when the taxes have been paid before sale."    But it is insisted in behalf of the plaintiff in error that, if this statute were held conclusive of the purchaser's title, it is unconstitutional, because it would deprive the land-owner of showing that there was no assessment, or a wrong assessment, or no notice, etc.    The bulwark of this position is the opinion of the court in *Griffin* v. *Mixon,* 38 Miss.

But the opinion relied on has been repeatedly virtually overruled by this court, and the principles therein stated in the opinion of the majority of the court have been rejected, and contrary rules held, in *Griffin* v. *Dogan,* and *Meeks* v. *Whatley, supra.*    And the same rules have been held, and the opinion of the dissenting member of the court has been recognized as the correct view of the law, by both Judge Hill and Judge Woods, separately and at different times, in the Circuit Court of the United States, and by Judge Cooley in his work on Taxation.    The opinion now relied on by adverse counsel will scarcely be followed at this time.

We submit, therefore, that, neither as making the tax deed *prima-facie* or conclusive evidence of the performance of incidental acts relating to the sale of the land, can the statute

under consideration be pronounced unconstitutional, but that in both respects it is valid law.

It is, however, sufficient for our purpose, and for the affirmance of this judgment, that it was clearly constitutional in making the tax deed *prima-facie* evidence of the title of the plaintiff below under it; of which a reasonable doubt cannot be raised. For it is to be observed that this record shows that no effort was made by the defendant below to show a want of assessment, or an illegal assessment, or fraud therein, as it is insisted by adverse counsel he had the right to do, of which he could not be constitutionally deprived by legislation. If he intended to rebut the *prima-facie* case as to these matters arising from the deed, and to claim the benefit of it in this court, he should have adduced his evidence to that effect; and, having failed to do so, the *prima-facie* case of the plaintiff below must stand, and the judgment as to these suggestions of error must be affirmed.

3. The only defense offered by defendant below to rebut the *prima-facie* case shown by the deed to the plaintiff, and here insisted upon, was the testimony offered by him to show that proper notice of the tax sale was not given; which was rejected by the court, on the ground that the statute, section 1697, provides that " no error in the advertisement, or failure to advertise, shall invalidate the sale for taxes of any land on which the taxes were not paid."

This ruling was correct, and the statute authorizing it was clearly within the legislative power. For the Constitution provides that the Legislature shall provide by law for the sale of all delinquent tax lands, and " that the same liberal rules in favor of titles under sales for taxes shall be applied by the courts as in sales by execution." Constitution: Code, 666, sec. 8.

The rule is settled here that errors or irregularities in the notices of sales by a sheriff under execution, or his omission entirely to give notice, will not vitiate the title of a *bona-fide*

purchaser of land at such sale.    *City of Natchez* v. *Minor,* 10·
Smed. & M. 246.

This rule must be presumed to have been in the contem--
plation of the framers of the Constitution in the above sec--
tion, and of the Legislature in passing the statute in question ;
for both the provisions have distinct reference to the rule in
execution sales, and are in coincidence with it.

There is, therefore, no ground for the position that the
statute is unconstitutional.   Nor is there any pretense of evi-
dence, or effort to show, that the defendant below was not a
*bona-fide* purchaser of the land at the tax-collector's sale.

4. But two other points of defense were suggested in behalf
of the defendant, on the trial below : the one, that Dinkins,
the occupant of the land, had sufficient personal property
which might and ought to have been seized and sold to pay
the taxes ;   and that the tax-collector gave him no notice to
pay the taxes, and made no demand thereof of him.

On these points the testimony was conflicting, and such as it
was for the jury to determine, and it was settled by the ver-
dict for the defendant in error.   They are not insisted upon
in either of the briefs of counsel for plaintiff in error, and we
presume are not relied on as grounds of error.

*A. H. Handy* also made an oral argument.

SIMRALL, C. J., delivered the opinion of the court.

It is assigned for error that the court below ought not to
have allowed the tax-collector's deed in evidence to the jury,
without first showing as a foundation therefor that the land
had been properly assessed ; that the occupant, or reputed
owner, had not sufficient personal property to pay the taxes ;
that notice and demand had been given and made before
the sale ; that the sale was duly advertised, and regularly
made.

In support of this assignment, and other positions taken by
the plaintiff in error, on the trial in the Circuit Court, it is
contended that the sections of the Code, 1677 and 1700, are

unconstitutional; or, if not in conflict with the Constitution, that their effect was to make the tax-collector's deed *prima-facie* evidence, and not conclusive — and, therefore, it was competent to inquire into the truth of the facts by testimony.

It is important, then, to fix the meaning of these sections preliminary to a consideration of their constitutionality.

The words are (sec. 1700): "which conveyance shall vest in the purchaser a perfect title to the land sold, * * * subject to the right of redemption; and no such conveyance shall be invalidated in the courts of this state except by the proof that the taxes * * * had been paid before sale; and the tax-collector's sale to individuals, and list of lands sold to the state, shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid."

In order to give harmony to the entire section, we must, if possible, give such constructions to the several particulars as will produce that result. If the first member of the section stood alone, it would seem as if the Legislature intended to make the tax-collector's deed conclusive — vesting in the purchaser " a perfect title." But read in connection with the subsequent clauses, it is plain that the general words are subject to important qualifications; for the right to " invalidate the conveyance in any court" is given for a certain cause. And, further, it is declared that the " conveyance shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid." Moreover, we must avoid that construction, if possible, which would defeat the whole law, or an important part, by conflicting with the Constitution. It would be perhaps an unwarranted exercise of power, in the Legislature, to declare the tax-collector's deed conclusive to pass the title. Blackw. on Tax Titles, 80, 82; Cooley's Const. Lim. 369; *Stoudenmeyer* v. *Brown*, 48 Ala. 708, 709. There are certain proceedings which lie at the foundation of the power to sell. There must be, first, a due assessment of the property; there must be default in the debtor in the payment of the taxes; and there must be in the hands of the

collector the assessment-roll, which is in the nature of a warrant to collect — like an execution on a judgment. It may be said, if these things concur, the officer is armed with authority to proceed by sale, if necessary.

We have no difficulty in holding that it is competent for the Legislature to affix to the collector's deed the presumption that these things exist, and to shift on the party contesting the sale the *onus* of overcoming the presumption by proof. That question is settled by authority. *Belcher* v. *Mhoon*, 47 Miss. 620; *Griffin* v. *Dogan*, 48 Miss. 19; *Meeks* v. *Whatley*, 48 Miss. 340; *Stoudenmeyer* v. *Brown*, 48 Ala. 709; Cooley's Const. Lim.

The embarrassment in the construction of statutes, in reference to tax sales and titles, is a good deal aggravated by apparent conflicts in the provisions of the statute. It is apparent, however, especially from section 1700, that the Legislature designed to give confidence and strength to such titles. That statute is *in pari materia* with the act of 1860, which has been several times considered by this court. The Legislature has repeatedly attempted to fortify the title of the purchaser by raising the presumption that the tax-collector has done in whole, or in certain particulars, his duty in respect of the sale, and of things required anterior to the sale. The Convention had in mind the chronic infirmity of tax titles, growing out of the rigid rule established by the courts that the asserter of the title must show that every provision of the law has been strictly complied with; otherwise, the sale would be void. And it embodied in the Constitution a provision which would relieve the purchaser to some extent from this rigorous rule.

It is section 8 of article 12: "The Legislature, at its first session, shall provide by law for the sale of all delinquent tax lands. The courts shall apply the same liberal principles in favor of such titles as in sales by execution." The first clause of the section is directory, and confers no power which the Legislature did not already have to make laws in respect of the

subject-matter. The last clause introduces for the first time a permanent rule, which the Legislature could not abrogate, which repealed the old rule to guide the courts in the consideration of such titles. The common law was that the tax-collector must literally, in every particular, comply with all the directions of the law; and that the purchaser must show affirmatively such compliance, or his title would be invalid. The purchaser at execution sale was not affected by many irregularities of the sheriff in the execution of the process of the court. If the purchaser showed a valid, subsisting judgment of a court of competent jurisdiction, execution predicated on it, a levy, and the sheriff's deed, he had established authority in the officer to sell the debtor's property, although there may have been irregularities, such as a failure to give notice. *City of Natchez* v. *Minor*, 10 Smed. & M. 255, and cases there cited. The doctrine is that the sheriff's deed cannot be collaterally impeached for irregularities in his proceedings. The essential things are the judgment, execution, levy, and sheriff's deed. *Ward* v. *Bradford*, 2 Ala. 682.

As already intimated, the essential things which create authority in the tax-collector to collect the taxes by sale are: a legal assessment — that constitutes the owner of the property debtor to the state; and, second, a delivery of the assessment-roll to the collector — that authorizes him to receive the money as therein charged against property or persons; and, third, if default is made in payment on the day appointed by law, he has power to distrain and sell. The assessment, when approved by the Board of Supervisors, opportunity being afforded all interested to point out errors and correct mistakes, is like a judgment. The assessment-roll, or a copy, placed in the sheriff's hands, is like the execution, and arms him with power to enforce the money, if default is made in payment. If, therefore, there has been a legal assessment, and the roll has been handed the sheriff for collection, and he sells after default made by the tax-debtor, we think that the Constitution is imperative that the courts shall regard his sale

with the same indulgences and favor as it does that of the sheriff under execution.

If it be objected that the tax-collector gave imperfect notice of sale, or altogether failed to do so, the answer is that the purchaser is not affected by that irregularity, because we must suppose that the Convention were aware of the law in this state, established in *City of Natchez* v. *Minor*, 10 Smed. & M., and that they meant to apply the same rule to tax sales and deeds.

It follows, if these premises be sound, that a defective advertisement of the particular property is one of those irregularities which the courts are enjoined by the Constitution to disregard. But we need not go so far as that; for the final clause of section 1697 enacts " that no error in the advertisement, or failure to advertise, shall invalidate the sale of any land on which the taxes have not been paid." It could hardly be doubted, in view of the provision of the Constitution quoted, that this is valid legislation. The statute fixes a day for the sale of delinquent lands, and it may well be supposed that if the owner has made no provision for payment of his taxes, he is aware that they will be sold, and of the time, and acquiesces therein.

Is the sale void if the tax-debtor had personal property which the collector might have found if he had made search? Or, is it a condition precedent to the power of sale that the tax-debtor did not have personal property which might have been found? See sec. 1697. This section must be read in connection with other provisions of the statute on the same subject, especially section 1700. If we hold that the ownership of personal property in the county takes away the power to sell land, we must give to section 1700 a much broader meaning than its language imports — we must enlarge the causes for which the sale and title may be invalidated.

A close analysis of this section discloses the dominant idea to be that the title of the purchaser must be upheld, unless some vital infirmities defeat it.

After giving the form of the conveyance, the declaration is,

"which conveyance shall vest a perfect title," etc. The next is that it shall not be invalidated "except by proof that the taxes have been paid before sale." And the last is "that the conveyance shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid."

We have seen that the assessment, its approval by competent authority, and delivery of the roll, or a copy of the roll, of assessment to the sheriff were the fundamental, essential ingredients of his power to proceed in the collection of taxes. The section under review seems to contemplate that there must be a legal assessment and sale ; and, if that be so, then the conveyance shall not be impugned except on proof of taxes paid before sale. That is to say, it shall not be impeached because the tax-debtor had personal property out of which the taxes might have been made ; nor, secondly, because there was not "notice" and "demand" made of the debtor.

When the language is specific, that the conveyance is *prima-facie* evidence of the validity of the "assessment," "sale," and proceedings of sale, it is tantamount to the affirmation that it shall not be conclusive of validity, but the truth may be established by evidence.

We conclude, therefore, that the grounds upon which the conveyance may be impeached are (1) that the taxes were paid before sale ; (2) that the assessment was illegal ; and (3) that there were such infirmities and defects in the "sale, and proceedings of sale," as would make it invalid.

We think that the fair and true rendering of section 1700 limits and confines the objections to a tax title to these points, and refers all other exceptions to mere irregularities, which shall not vitiate the title. In this last category is a sale of land without "making demand of a settler resident on the land," or "personal demand of the tax-debtor," or "leaving a written application at his residence," as specified in section 1697. So, where there might "be personal property on which a levy might be made," a sale of land would not be void.

These provisions of the statute are directory merely, and do not go to the foundation of the collector's authority.

We have already stated what are the essential ingredients of his authority, and when these exist. All other departures from the letter of the statute are irregularities, cured by the sale and conveyance.

The last requisition of section 1697 referred to was not meant to be a condition precedent to the power of sale, but to fix the order in which the two classes of property were liable. All the property of the delinquent is liable — personalty first, and then the lands.

In substance, precisely the same direction is given the sheriff in levying money under execution : " Land shall not be levied on if sufficient personal property be found, or surrendered by the debtor." Code 1871, sec. 842. So much as a doubt never has been suggested that the purchaser's title at sheriff's sale could be impeached by proof that the debtor had personal property in the county, easy to be found, sufficient to satisfy the judgment. A contrary doctrine would expose land titles acquired at sales under judgments and decrees to such risks and uncertainties that property would often be sacrificed, to the ruin of both debtor and creditor ; and consequences exceedingly detrimental to credit and business would affect the entire community.

The Constitution is imperative that we must look with the same favor on the tax-collector's title as we do on one derived from the sheriff. *Non*-compliance by the sheriff with section 842 does not avoid his sale under execution ; nor should the *non*-conformity of the tax-collector with the directions of section 1697 make void his title.

We proceed now to apply the principles hereinbefore announced to the case developed on the trial.

The objections were not sufficient to exclude the deed, and it was not error to admit it in evidence to the jury. Nor was it error to exclude testimony tending to prove that E. Virden, the landlord, had personal property in Madison County suffi-

-cient to pay the taxes; nor to exclude evidence of defective
.advertisement of sale in the particular mentioned.

Testimony was admitted, without objection, to the effect that
E. Virden was the owner of the land, and that Dinkins was his
tenant.

The theory of the revenue law is that the property assessed
is liable for the taxes, without regard to whom the land may
be.set down as reputed owner, or who may own the land when
.assessed or when sold. The land, the specific parcel, is
-chargeable with the tax. Code 1871, sec. 1665.

Testimony was admitted, without objection, pro and con, on
the point of whether. Dinkins, the reputed owner, had per-
sonal property liable to levy. Whether he had or not does.
not, as we have seen, affect the title of the purchaser.

Several instructions were given at the request of each party.
Some requests were refused.

We have the whole case before us, on bill of exceptions to
the refusal to grant a new trial. It would be a useless labor
to consider the several instructions, since. the plaintiff was
entitled to the verdict. The defendant made no attempt to
destroy the presumption arising from the conveyance by evi-
dence tending to show that the taxes had been paid before sale;
or that the assessment was illegal, or insufficient in law; or
that the sale, or proceedings of sale, were invalid.

However the truth may have been on all the questions to
which the defendant offered testimony, the validity of the sale
could not be affected, as they referred to irregularities or
omissions; which did not make it void.

On the whole case, let the judgment be affirmed.


CHALMERS, J., concurring.

I concur fully in the views announced by the chief justice.
The importance of the subject induces me to state, in a few
words, the construction which I understand to be given to
section 1700 of the Code of 1871.

So much of it as declares that no tax deed shall be invali-

dated in any court except by proof that the taxes were paid before sale, is held, in its broadest sense, to be invalid, both because it is in excess of legislative authority, and because it is limited and qualified by the subsequent clause of the sentence.    Standing by itself, without limitation, it would render perfect a title under a tax-collector's deed executed in private, without either assessment or sale.   Such a law the authorities cited in the principal opinion show to be unconstitutional.    But the remaining clause of the section, which declares that the tax-collector's conveyance "shall be *prima-facie* evidence that the assessment and sale, and all the proceedings of sale, were valid," demonstrates that if the defendant (assuming the burden of proof, as he is bound to do) shall affirmatively establish that the assessment and sale, and proceedings of sale, were invalid, he will overthrow the title. What circumstances will constitute such invalidities the Legislature has not defined, but left to judicial construction.    The Constitution declares that the courts shall apply the same liberal principles of construction as in sales by execution.   So far as may be, the tax sale must be assimilated to sales under execution.    Whatever fails to vitiate the one must fail to invalidate the other.    Wherever, therefore, other portions of the statute direct the collector to do certain things in connection with, or preceding, the sale, unless they be things the omission of which would invalidate a sale under execution, the statute must be regarded as imposing duties on the officer for a failure to discharge which he will be liable to the state, or party aggrieved, but the absence of which will not affect the title of the purchaser.    Within this rule each case must stand upon its own facts.

CAMPBELL, J., specially concurring.

I have no doubt of the power of the Legislature to provide that land legally assessed for taxes shall, in case of non-payment of the taxes by a certain time, be sold at a fixed place and time, and in a certain way, and to declare that a convey-

ance made to a purchaser at such sale shall not be invalidated in any court of this state except by proof that the taxes for which said land was sold had been paid before sale ; and, further, to declare that such conveyance shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid. This is precisely what has been provided in the Code of 1871. Although it is declared in section 1691 that "land shall not be sold for taxes unless sufficient personal property of the owner cannot be found of which to levy said taxes," and this qualification is reiterated in section 1697, and it is also declared in the same section "that no lands shall be sold for taxes, whereon any actual settler shall reside, unless" the taxes shall have been demanded of such settler personally or by writing left at his residence, it is expressly declared in section 1700 that the conveyance made by the tax-collector shall not be invalidated except by porof that the taxes for which said land was sold had been paid before sale ; and then it is declared that "the tax-collector's conveyance to individuals, and list of land sold to the state, shall be *prima-facie* evidence that the assessment and sale, and all proceedings of sale, were valid." That is, if there was a legal assessment, and a legal sale as to time, place, and manner of selling, the prescribed conveyance of the tax-collector shall not be invalidated except by proof that the taxes had been paid before the sale, and such conveyance shall be *prima-facie* evidence of the validity of the assessment and sale, and manner of making the sale.