LOTT *v.* SEBREN, et al.

Division A. Nov. 27, 1950.

No. 37688 (48 So. (2d) 626)

**R. C. Russell,** for appellant.

Beverly C. Adams, R. E. Spivey, Jr., and E. F. Steiner, and Edwards & Edwards, for appellees.

**Kyle, J.**

This is a suit filed by P. D. Lott, Jr., as complainant, against N. R. Sebren and the Federal Land Bank of New Orleans, as defendants, to cancel cloud on complainant's title to approximately 8.75 acres of land in Simpson County, Mississippi, and for the recovery of the value of timber alleged to have been cut on the land by the defendant, N. R. Sebren.

The bill of complaint was filed in the Chancery Court of Simpson County on the 13th day of September, 1948. In his bill, which contained a deraignment of title, the complainant claimed title, under a deed from the South Mississippi Land Company, dated the 10th day of January, 1942, to the tract of land described as the north half of the north half of Lots 3 and 4, in Section 6, Township 9 North, Range 17 West, containing 48.75 acres. The complainant alleged in his bill that the defendant, N. R. Sebren, several years prior to the date of his own deed, had purchased from the Federal Land Bank of New Orleans a part of Lots 3 and 4, Section 6, and had obtained from the Federal Land Bank a deed of conveyance of the land described as the North half of Lot 3, less 20 acres on the north side thereof and 10 acres on the north side of the South half of Lot 3, and the North half of Lot 4, less 20 acres on the north side thereof; that the description of the land conveyed to the defendant, N. R. Sebren, by the Federal Land Bank overlapped on the land which the complainant had purchased from the South Mississippi Land Company; that the complainant had the better record title; and that complainant was entitled to have the defendant's claim of title to the 8.75-acre strip cancelled as a cloud on complainant's title.

The defendant, N. R. Sebren, in his answer admitted that the South Mississippi Land Company had executed to the complainant a deed of conveyance of the North

half of the North half of Lots 3 and 4, on the 10th day of January, 1942, as alleged in the bill of complaint. But the defendant averred in his answer that he had acquired title to the North half of Lot 3, less 20 acres on the North side thereof, and 10 acres on the North side of the South half of Lot 3, and the North half of Lot 4, less 20 acres on the North side thereof, by deed from the Federal Land Bank dated the 15th day of October, 1936, and that he had been in possession of said land, which included the 8.75-acre strip in controversy, owning and occupying the same as his own, since that date. The defendant in his answer, which was also made a cross-bill, averred that his possession of said land had been actual, adverse, open, notorious, hostile and continuous since the date he had purchased the same from the Federal Land Bank in 1936.

The Federal Land Bank, which was also made a party defendant to the bill of complaint, in its deed of conveyance to N. R. Sebren, had reserved a one-half interest in the mineral rights; and the bank filed a separate answer.

Both defendants in their answers alleged that the complainant, at the time he purchased his part of said Lots 3 and 4, had personal knowledge of the rights and claims of the defendants in and to the strip of land in controversy.

The case was tried at the July 1949 term of the court. The chancellor heard the testimony offered on behalf of the respective parties, and at the conclusion of the hearing the chancellor rendered a decree in favor of the defendants, dismissing the original bill of complaint and confirming the title of the defendant, N. R. Sebren, to the strip of land in controversy. The chancellor found, and the decree so states, that the defendant, N. R. Sebren, had been in actual adverse possession of the strip of land in controversy since the 15th day of October, 1936, and that defendant's possession had been adverse, open,

notorious, hostile, exclusive and continuous for more than ten years since the date of his entry upon the land.

From the above mentioned decree the appellant prosecutes this appeal.

The assignment of errors is based mainly upon the findings of facts by the chancellor that appellee had been in actual adverse possession of the land in controversy for a period of more than ten years next preceding the date of the filing of the bill of complaint, and that appellant had actual knowledge at the time he purchased the land from the South Mississippi Land Company that appellee was holding the strip of land in controversy adversely to appellant's grantor.

From an examination of the testimony taken in the trial of the case, it is clear that the evidence amply supports the findings of the chancellor on the question of adverse possession.

The record shows that the appellee and his immediate predecessors in title had been in actual adverse possession of the parcel of land in controversy since 1918 under deeds of conveyance which showed color of title. By mesne conveyances and foreclosure of a deed of trust the Federal Land Bank became the owner of the parcel of land in 1932, and continued to hold possession of the property until the property was conveyed to the appellee, N. R. Sebren, on the 15th day of October, 1936. The Federal Land Bank had made a loan on the land to J. T. Singletary, the reputed owner, on July 15, 1925. Singletary rented the land to tenants who resided on the land and cultivated parts of the land until the Federal Land Bank foreclosed its mortgage in 1932. The Federal Land Bank then rented the lands to tenants and collected the rents for a period of several years, until the land was sold to Sebren. Sebren purchased the land in 1936, erected a fence along the north line of the strip in controversy, built a new house on the strip of land in controversy, and continued to occupy the property until the date of the trial. A part of the strip of land in controversy was

cultivated, other parts were in pasture, and still other parts in woodland. Sebren exercised all the rights of ownership over the property, claiming it as his own, from the date of his purchase of the property from the Federal Land Bank in 1936 to the date of the trial. When the appellant purchased the tract of land lying immediately north of the Sebren tract from the South Mississippi Land Company in 1942, he had personal knowledge of the fact that the appellee, Sebren, was in actual possession of the 8.75-acre strip in dispute claiming it as his own, and had been in possession of same for several years.

There is no contention on the part of the appellant that the possession and rights of ownership exercised by the appellee and his predecessors in title prior to 1942 were not hostile and adverse to all other parties, including appellant's immediate predecessors in title. But the appellant contends that after he had purchased his tract of land from the South Mississippi Land Company in 1942, he had several conversations with the appellee about the strip of land in controversy and called appellee's attention to the fact that the description of the lands in their respective deeds overlapped, and that appellant's deed covered the 8.75-acre strip in controversy. Appellant persuaded the appellee to go to the courthouse with him to have the clerk verify the descriptions in both deeds, and appellant discussed with appellee the matter of ''going into chancery court and seeing whose land it was.'' Appellant testified that ''we recognized one another's deed as neighbors, and we had this understanding. We figured it might come to court some day, and if it did we would still be friends right on. . . . The only understanding that we really had was that we recognized one another's deed.'' Appellant contends that these conversations and expressions of good will, and the recognition of ''one another's deed as neighbors,'' tolled the running of the statute of limitations and estopped the appellee from asserting title by adverse possession. We do not think that these verbal con-

versations, or ambiguous assertions of a doubtful claim by the appellant, were sufficient to prevent the bar of the statute of limitations.

A similar contention was rejected by this Court in the case of Daniels v. Jordan, 161 Miss. 78, 134 So. 903, 904, in which the facts presented were very similar to the facts that we have before us. In that case the Court said:

"The appellee (Jordan) relies strongly upon the statements made by Daniels that he was willing to do what was right, and did not want anything except what was his own, made prior to the running of the statute, as operating to stop the running of the statute, or to estop Daniels pleading the statutory limitations.

"We do not think these verbal statements are sufficient. There must be either a suit during the time before the expiration of the ten-year period or there must be a physical interruption of the adverse possession, or some unequivocal asserting of the claimant's rights, which would enable the person in possession to institute legal proceedings in trespass or otherwise to prevent acts of ownership."

We think that the findings of the chancellor on the facts are amply supported by the testimony, and that the decree of the lower court should be affirmed.

Affirmed.