WILSON, et al. *v.* RUSSELL.

Mar. 9, 1953

No. 38702 23 Adv. S. 47 63 So. 2d 240

*Patterson & Patterson* and *Jones & Stratton* contended for appellants that Russell failed to meet the burden of proving title to the land in dispute by adverse possession, argued the facts in detail and through the argument cited the following authorities:

*Wall & Allen* and *Barnett, Jones & Montgomery* in reply for appellee, cited the following:

LEE, J.

L. G. Russell, as complainant in the court below, sought by his bill to fix the boundary line between his lands and those of Herbert E. Wilson and others, who were made defendants. The controversy is over thirty acres. The bill alleged that the left prong of the branch, mentioned in the descriptions in the deeds, is the line, and that the complainant had obtained title to the land north of that prong, to-wit the 30 acres, by adverse possession for the statutory period. The answer denied the allegations of the bill, denied that the left prong is the line, maintained that the acreage is within the calls of their deed, and that they have had full possession of the 30 acres during the period in question. From a decree adjudicating the left prong as the line, and thus finding that the complainant is entitled to the disputed 30 acres, the Wilsons appeal.

Title of both parties in this litigation was derived from a common source. The deed of John Wilson, husband and father of the defendants, dated February 23, 1910, called for 50 acres; but, according to the map of the survey introduced in evidence, if the defendants are entitled to the 30 acres, they, in fact, have 87 acres in their tract. The deed to H. P. Russell, father of the complainant, dated October 11, 1911, called for 360 acres; but, if the complainant is not entitled to the 30 acres, he, in fact, has only 330 acres in his tract. The land in controversy is included within the metes and bounds description of Wilson's deed, but a limitation therein says that the deed conveyed only that part of the quarter section "lying south of the left prong of the branch above named, that lying north of it having been deeded to Sallie Butler," who was H. P. Russell's immediate grantor. According to the metes and bounds description, the 30 acres were not included within the Russell deed.

When John Wilson took possession of his land in 1910, he erected a wire fence on the south side of and along the

left prong of the branch in question, and the land south of the fence was put in cultivation.

The proof for the complainant was to this effect: In 1911, Russell took possession of this 30 acres as a part of the 360 acres called for in his deed. During the period from 1922 to 1930, he executed seven deeds of trust on his 360 acres. In 1925, he sold the timber on the whole acreage, and the timber on the 30 acres was cut as a part of his tract. Wilson's home was within 150 yards and in sight of the cutting. He knew about it and was present once or twice where the men were cutting, but made no objection thereto. In 1933, Emmett Russell, a brother of the complainant, tied a wire fence which he was building in to the existing wire fence along this prong of the branch so as to enclose the 30 acres and pastured cattle thereon for more than a year. Wilson knew about this, but made no objection. In fact, he asked and obtained permission of Emmett Russell to pasture two or three head of his own cattle within the enclosure. Complainant obtained his title to the 360-acre tract in 1934. In 1936, he granted permission to J. W. Hedgepeth to erect a fence for pasture purposes in the same location of the original Emmett Russell fence, and Wilson made no objection to such use. In 1936, John Wilson cut five or six oak trees off of this land for wood. Complainant talked to him about the matter, protested, and Wilson said that he would not do such a thing any more. Thereafter, from 1936 to 1946 complainant lived in New Orleans, Louisiana, but every two weeks, he and his wife returned to their place, walked over it to ascertain if there had been any trespassing and found no evidence thereof. In 1946, he moved on the place. In 1947, he made a selective cutting of timber on the 30 acres. John Wilson made no objection thereto. Complainant and his father before him had the 360-acre tract assessed to them and have paid all taxes thereon. The Wilson property, during this period, was assessed as 50 acres, and their homestead

exemption, since 1940, contained only 50 acres. The mineral deed which complainant executed in 1937 covered the whole 360-acre tract, but a like deed, executed by John Wilson in the same year, called for 52 acres.

For the defendants, the evidence was that after John Wilson acquired his deed in 1911, he claimed this land until his death in 1948, and that his heirs at law have since claimed it. During his lifetime, he cut firewood, crossties, bean sticks, and a board tree from the land. In 1947, when complainant was cutting timber, Mrs. John Wilson complained and the cutting was stopped. Later, complainant told John Wilson that he, Russell, would stay off the land if he, Wilson, would do so.

In rebuttal complainant denied that Mrs. Wilson complained about his 1947 cutting and denied that he stopped the work. He also denied that he had a conversation with John Wilson whereby he agreed to stay off of the land if Wilson would. He and his wife testified that during the period when they were living in New Orleans, Louisiana, they came home every two weeks and walked over and inspected their whole tract, including the 30 acres, and that, on those occasions, there was no evidence of timber cutting for logs, crossties, bean sticks or boards.

Mrs. John Wilson, the widow, who had lived within sight of the disputed land for over 40 years, and who should have known much about the nature of her husband's possession of this land, if he in fact claimed it and exercised acts of ownership thereover, was shown to be present in the courtroom and available as a witness, but she did not testify.

Thus, it will be seen that there was a sharply disputed issue of fact, which was resolved in favor of the complainant and against defendants.

This was wild land, and if the complainant's evidence is believed, he and his father before him had exercised for a long period of time, more than ten years, such acts of possession thereover of which the land was susceptible;

that John Wilson had actual knowledge of such acts of possession; and that he did not protest or do anything to stop or restrain such acts or put the Russells out of possession.

The learned chancellor resolved this issue in favor of the complainant, and the facts so found bring this case clearly within the principle announced in McCaughn v. Young, 85 Miss. 277, 37 So. 839, which was cited with approval and followed in Native Lumber Co. v. Elmer, 117 Miss. 720, 78 So. 703, and Broadus v. Hickman, 192 Miss. 114, 5 So. 2d 717. See also 2 C. J. S., Adverse Possession, Section 45, page 559, as follows: "The owner's actual knowledge of the adverse possession is equivalent to, and dispenses with the necessity of, open and notorious possession."

 As stated above, although Wilson had knowledge of such acts of possession by the Russells he did not even make a verbal protest or objection, but that alone, of course, would have been insufficient. He certainly did nothing to bring about a physical interruption of the Russells' adverse possession, as is required under the rule in Daniels v. Jordan, 161 Miss. 78, 134 So. 903, which was cited with approval and followed in Lott v. Sebren, 210 Miss. 99, 48 So. 2d 626; and Batson v. Smith, 211 Miss. 428, 51 So. 2d 749.

Since the evidence fully justified the trial court in the findings which he made, it follows that this cause must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Lotterhos, JJ.,* concur.