### Trotter *v.* Roper, et al.

No. 40349 January 14, 1957 92 So. 2d 230

*G. J. Trotter,* Maxie, pro se.

*C. W. Sullivan, D. Gary Sutherland,* Hattiesburg, for appellees.

LEE, J.

G. J. Trotter, acting for himself and without the counsel or assistance of a lawyer, on January 27, 1955, filed his bill of complaint against Frank C. Roper and others, the claimants of the surface and mineral rights in and to 40 acres of land, as described therein. By his deraignment he showed title to the land out of the United States, and, by mesne conveyances, into himself on December 29, 1927. He alleged that a diligent search of the records failed to reveal that the land was advertised for sale, or was legally sold, for taxes during the year 1937; that he was not given notice in 1939 that it had been sold or that he would lose possession, if it was not redeemed; and that, for these reasons, a tax deed to the land from E. E. Hudson, Chancery Clerk, to D. Seward of date of November 7, 1939, duly of record, was an error. In the deraignment, however, he listed two deeds from the tax collector dated September 19, 1938, and September 19, 1939, as well as mineral conveyances, and a deed from D. Seward to J. C. Edwards, dated November 19, 1940, for the surface. He further alleged that much timber and a good wire fence were removed from the land. The prayer of the bill was for confirmation of his title, and the execution of a deed to him for that purpose.

The answer of the defendants averred that the complainant, as the owner, was assessed for the taxes on this land for 1936 and 1937; that the taxes for 1936 were not paid, and that the tax collector, on the third Monday and 20th day of September, 1937, sold the land for the 1936 taxes to D. Seward; that E. E. Hudson, chancery clerk, on November 7, 1939, after title had ripened, executed a valid deed of conveyance to D. Seward for the land, a true copy of which was attached; that on

November 19, 1940, D. Seward conveyed the land to J. C. Edwards; and that, following this conveyance, J. C. Edwards went into immediate possession and has claimed the same ever since—more than 10 years before the filing of this suit. The defendants made their answer a cross bill and deraigned the title fully, among other things, exhibiting true and correct copies of the tax deed from Hudson, chancery clerk, to Seward, and the deed from Seward to Edwards, supra. They also alleged that they had been in possession of, and had claimed, the land for more than 10 years by adverse possession, detailing various possessory acts and alleging that they were the acts of which the land was susceptible; and that they had acquired title to the land by adverse possession. They prayed that their claim of title, both to the land and the minerals, should be quieted and confirmed against the complainant, and that his claim thereto should be cancelled.

In his answer thereto, the complainant denied that the land was sold on the third Monday of September, 1937, and that the tax deed was valid. He admitted that "A more complete destruction of everything of value could not have been accomplished by an army with orders to obliterate it". Thereafter, in an additional amendment, the complainant asked leave to add the name of George Husband as a defendant, and charged that he combined and co-operated with the other defendants to deprive him of the use of his land since 1941, and that a residence on the land was removed or destroyed. By a subsequent amendment, he attached certified copies of the land assessment roll for 1940, a list of lands sold to individuals on September 20, 1937, which incidentally showed this land was sold and that notice thereof to the owner had been issued, a sketch of the land, the deed from D. Seward to J. C. Edwards, and a mineral transfer from D. Seward to Frank C. Roper.

The complainant, testifying for himself, denied that the land was advertised for sale, but he offered no

proof whatever to establish this. He said that he did not receive notice of the sale or that the title would become absolute in the purchaser unless it was redeemed by a certain date. He said that he went to the chancery clerk in January 1940 for the purpose of redeeming the land, but that the clerk informed him that it was too late to do this. He admitted that the whole basis of his complaint was the tax sale, which he contended was invalid for the reason that the sale was not advertised and that he was not given notice about redemption. His excuse for not filing a suit within ten years from the time that the defendants went into possession was his financial inability to do so.

At the close of the evidence, the court granted a decree upholding the validity of the tax sale and quieting and confirming the title of the defendants and cross-complainants to their respective interests in this land as against the complainant and cross-defendant. From this action of the court Trotter appealed.

 ██ Of course a valid tax sale vests title in the purchaser. Section 9744, Code of 1942.

The tax sale, complained about, occurred on the third Monday and 20th day of September, 1937, the regular time provided by law for such sales; and "neither a failure to advertise, nor error in the advertisement, * * * shall invalidate a sale at the proper time and place for taxes of any land on which the taxes were due and not paid * *". Section 9923, Code of 1942.

 ██ The clerk of the chancery court, under Section 9941, Code of 1942, is required to give notice to the owner of land sold for taxes that the title will become absolute in the purchaser, unless redeemed by a certain date, in the manner and for the time therein provided. Code Section 9942 provides the method and manner of service. However, it is expressly stated therein "but a failure to give the notice required by this section shall not affect or render the title void". See also Santa Cruz v. State of Mississippi, Miss., 78 So. 2d 900.

██ The answer and cross bill of the defendants exhibited a true copy of the tax deed from Hudson, chancery clerk, to Seward. As early as 1877 this Court, in Virden v. Bowers, 55 Miss. 1, held that a tax collector's deed is prima facie evidence of regularity, the second syllabus being as follows: "A tax collector's deed is prima facie evidence that all things essential to the collector's power to sell the land conveyed existed at the time of the sale, and upon the party impeaching the sale rests the burden of overthrowing this presumption." See also Melvin v. Parker, Miss., 78 So. 2d 477; Griffith's Mississippi Chancery Practice, 2d ed., Section 220, pages 207-8.

██ The complainant, in his pleadings, admitted that the defendants had deprived him of possession of this land since 1941. Considerably more than 10 years elapsed from that time until the filing of this suit. Even if the tax deed had been defective or void, still it would have operated as color of title and therefore a sufficient basis on which adverse possession would have ripened into title. 2 C. J. S., Adverse Possession, Section 72c, page 591. See also Brown v. Pittman, 211 Miss. 344, 51 So. 2d 732.

██ After appellant knew, as admittedly he did in 1941, that he had been deprived of the possession of his property, it was necessary for him to bring a suit, or otherwise effect a physical interruption of the adverse possession. Daniels v. Jordan, 161 Miss. 78, 134 So. 903; Lott v. Sebren, 210 Miss. 99, 48 So. 2d 626; Batson v. Smith, 211 Miss. 428, 51 So. 2d 749. The flag of adverse possession was unfurled and flying without interruption from that time until this suit was filed—considerably more than ten years. See Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 16 So. 2d 24.

A close scrutiny of the record discloses that the trial judge was patient with the appellant in the trial of this case. By questions or inquiry he endeavored to get the facts and the appellant's contentions properly before

the court. There is nothing whatever in the record to justify the appellant's assertion in his brief that he was, in effect, debarred from prosecuting or defending this cause in the trial court in violation of Section 25, Article 3, Constitution of 1890.

Consequently, it follows that the decree of the lower court must be affirmed.

Affirmed.

*McGehee, C. J., Arrington, Ethridge,* and *Gillespie,* JJ., concur.

## ON MOTION TO REQUIRE ORIGINAL RECORDS BE FILED ON APPEAL

ROBERDS, P. J.

 Appellant, by motion filed herein, has requested us to order that certain original records in the offices of the chancery clerk and sheriff of Forrest County be sent to and filed in this Court for use on the appeal. The motion does not state that these records were introduced in evidence on the trial of the cause below, nor, if so, why it is necessary that the originals, instead of the copies, be sent to this Court.

Motion overruled.

*Hall, Lee, Kyle* and *Holmes,* JJ., concur.