CUMMINS *et al. v.* DUMAS.*

(Division A.    June 13, 1927.)

[113 So. 332.    No. 26492.]

1. EASEMENTS.  *Thirteen years' adverse possession of alley vested title, though person in possession was considered grantor because of joining in husband's deed.*

   Open, notorious, hostile, exclusive, and adverse possession of alley for more than thirteen years *held* sufficient to vest title, even though person in possession was considered a grantor by virtue of joining in deed executed by her husband.

2. ADVERSE POSSESSION.  *Grantor by holding in such manner as to notify grantee of adverse claim may acquire title by adverse possession.*

   Grantor may acquire title or right to lands by adverse possession as against his grantee, if possession and adverse holding are in such manner as to notify the grantee of adverse claim.

3. EASEMENTS.  *Limitations as to easements operate in same manner as to land itself.*

   Statute of limitations as to easements operates in the same manner and requires same length of time as if applied to land itself.

4. EASEMENTS.  *Grantee of alley easement is barred from obtaining relief against adverse possessor for more than thirteen years (Hemingway's Code, sections 2454, 2455).*

   Under Hemingway's Code, sections 2454, 2455, grantee of easement to use of alley is barred from relief against person in open,

notorious, hostile, exclusive, and adverse possession for more than thirteen years.

*Corpus Juris-Cyc References: Adverse Possession, 2CJ, p. 50, n. 16; p. 51, n. 17; p. 54, n. 31; p. 145, n. 95, 96, 97, 98, 99, 1, 2, 3; Easements, 19CJ, p. 873, n. 69; p. 878, n. 38; p. 879, n. 53, 54; p. 885, n. 56; p. 886, n. 61; p. 887, n. 74, 75; p. 891, n. 21; p. 956, n. 9, 10; p. 957, n. 19. As to loss of title to easement by adverse possession or nonuser, see annotation in 1 A. L. R. 884; 9 R. C. L. 423; 33 A. L. R. 807; 9 R. C. L. 811; 2 R. C. L. Supp. 879; 6 R. C. L. Supp. 579.

APPEAL from chancery court of Adams county.
HON. R. W. CUTRER, Chancellor.

Suit by Dr. A. W. Dumas against Mrs. Carrie Cummins and another. Decree for complainant, and defendants appeal. Reversed and judgment rendered.

*Engle & Laub,* for appellants.

We wish first to discuss the case on the theory that Mrs. Cummins, herself, had made a direct deed conveying the privilege to use this alleyway to the appellee, and that she herself was now claiming by adverse possession against the right of appellee to exercise such privilege, claiming that he had abandoned the privilege, that he had been ousted from the right or privilege and that he had acquiesced in this for more than ten years next preceding the filing of this suit. We contend that on this state of facts the decree of the lower court should be reversed and that a decree should be rendered herein in favor of appellants. See sections 2271, 2318, Hemingway's Code.

The question now before the court is whether under our law a person who conveys land to another thereby enters into a perpetual guarantee that the grantee will never suffer the title or right conveyed to be lost by his subsequent conduct, whether of omission or commission. Does the grantee by making the conveyance set himself up and become the guarantee and surety for his grantee that such grantee will not permit himself to be

ousted from possession and will not permit himself to lose his title by acquiescing in the grantor regaining title by adverse possession?

The provision in the law against a warrantor setting up an after-acquired adverse title relates solely to an adverse title which is not existent at the time of the conveyance. This is something entirely different from the grantor afterwards acquiring title by adverse posssesion. C. J., Subject, "Adverse Possession," pages 250-51.

Although for a period of over thirteen years Dr. Dumas had made no outward sign or interest in the right of way, the thought as to his rights and to his exclusion therefrom had been in his mind. On June 2, 1925, Dr. Dumas filed his bill of complaint. See *Abbett* v. *Page et al.,* 9 So. 332.

We submit that under this state of the case, Mrs. Cummins could maintain her claim of adverse possession subsequently acquired and acquiesced in by the appellee, even as against her own warranty deed. However, our case is stronger than the case we have argued, as the adverse possession is claimed both by Mrs. Cummins and by her husband, Ed Cummins, who had no part in and no interest in the previous transactions with appellee and his authors in title. See Thompson on Real Estate, section 2495.

*L. T. Kennedy,* for appellee.

The appellee holds under a warranty from the appellant for a right and privilege for the use of said right of way and the defendants have not established, nor could they establish against their grantee, a title by actual, adverse, hostile, notorious and exclusive possession.

The fact that Dumas did not use the alleyway after 1911, while the feeling was bad between the parties, did not constitute adverse possession in the appellants. In order for the appellants to claim title to the property by adverse possession, it must rest upon some conduct

upon their part and not upon what the appellee said or
did.

Even if the law of adverse possession would apply in
the case at bar as between a grantor and grantee, or in
the case of easements and right of way, the evidence for
the appellants falls far short of showing adverse, hos-
tile, notorious and exclusive possession for the statutory
period. After the trouble, Dr. Dumas did not use the
right of way and the matter was not mentioned between
the parties. Cummins testified that he did not tell Dumas
to stay out of the right of way until 1925; but if he had,
such advice upon his part would not satisfy any essen-
tial element necessary to constitute adverse possession.

The facts show that this right of way was a way of
necessity to the rear of said lots and even though it had
not been mentioned in the deed, there being an alleyway
at the location, the appellee would have been entitled
to the use thereof on account of it being a necessity.
*Mitchell* v. *Woodson,* 37 Miss. 567.

The possession of the alleyway and the title to the
alleyway have, at all times, been in the grantor, appel-
lants, and they were entitled to possession thereof and
this appellee was not entitled to possession. Therefore
the appellants' possession to the right of way was not
adverse to the right of appellee and could not ripen into
adverse possession.

McGowen, J., delivered the opinion of the court.

The appellee, Dr. A. W. Dumas, complainant in the
court below, filed his bill in the chancery court of Adams
county against appellants, Mrs. Carrie Cummins and her
husband, Ed Cummins, defendants in the court below,
alleging that he was owner of a lot, or parcel of land, in
Natchez, Miss.; that the defendants, the Cummins, were
adjacent land owners; that between the lots of complain-
ant and defendants there was a right of way, or private
alley, thirty-five feet wide, extending from Oak street

one hundred sixty feet in a southerly direction, and in the rear of the property owned by the complainant; that by a deed from the Shady Side Land Company conveying the lot to him, he acquired a right of way, privilege, and license to, over, and through said alley; and that defendants had closed up said alley, and to prevent his use thereof had constructed certain buildings therein obstructing same, so that complainant could not use the alley.

It is further alleged that it was necessary for complainant to use this alley in order to have ingress to and egress from his property. He prayed for an injunction restraining defendants from obstructing the alley, and asked that they be perpetually enjoined from closing, or obstructing the right of way, or in any way interfering with his free use thereof. To this bill, complainant attached a copy of his deed from the Shady Side Land Company, marked Exhibit A. The deed was a warranty deed and contained this provision with reference to the alley, after describing the lot of land:

"And also a right of way, privilege, and license to, over, through, and from a private alley, about thirty-five (35) feet wide, extending from Oak street, about one hundred and sixty (160) feet, in a southerly direction, immediately in the rear of said Real's lot and the lot herein described; being the same lot of land and right of way, privilege, etc., granted and conveyed to said parties of the first part by Charles R. Purnell and wife by deed dated February 17, A. D. 1893," etc.

The defendants answered, admitting that they lived on adjoining property, but denied that the complainant had any right of way, privilege, and license to, over and through, the private alley, thirty-five feet wide, extending from Oak street one hundred sixty feet in a southerly direction. They contended that the property in controversy was their own property; that they had fenced it off; that they had built houses thereon. They denied the complainant the right of ingress and egress over and

across the said alleyway, and aver that while complainant may have had a paper title to the alley, or license to use the same, he had forfeited such right to use the alley for the reason that for over ten years next before the bringing of this suit the defendants had been in open, adverse, continuous, and uninterrupted possession and enjoyment of the right of way, claiming same against the complainant and all persons whomsoever and against the world, that complainant had acquiesced in this, their claim, and that for more than ten years before the filing of this suit the alleyway had been completely fenced off from the complainant. In other words, the defendants plead the ten-year statute of limitations; and they made their answer a cross-bill and prayed the court that they be decreed the owners of the property in dispute.

The complainant offered in evidence the deed to him from the Shady Side Land Company, dated October 29, 1901; he also offered in evidence a certified copy of a deed from Charles R. Purnell and wife to the Shady Side Land Company, dated February 17, 1893, to the same property and the same right of way, and of Carrie Purnell to Charles R. Purnell of the same property. It was then shown that Mrs. Carrie Cummins, one of the defendants, formerly the wife of Charles R. Purnell, now deceased, and known as Carrie C. Purnell, is the wife of Ed Cummins, the other defendant. Mrs. Cummins testified that she did not own the lot at the time her husband conveyed it, or any interest therein, but signed the deed to the Shady Side Land Company with her husband as his wife; that she had lived on the lot since 1890, and that since the date of the deed to the Shady Side Land Company, a gate had been built across the alley, and Dr. Dumas had been permitted by them to use the alley, and furnished with a key by them to keep the gate thereof locked. It was a double gate, coming together against a post, driven in the ground, in the middle of the alley. She further stated: That both she and Dr. Dumas had a key to this gate. That until 1911, he used a horse and

buggy, and in that year he bought an automobile; that one night, about eleven o'clock, in that year, they had an altercation or some trouble regarding the gate. That he took an axe and cut down the post to which the gate was fastened, whereupon she told him to stay out of the alley. Prior to 1911, Dr. Dumas had a gate on the side of the alley leading into his lot. Immediately after this trouble, he took down the gate and nailed up the gap, making it a part of his fence. The Cummins also, immediately after this trouble, put up another gate, had a new lock fixed on same, and retained the keys to same, forbidding Dr. Dumas to use the alley any more. That since that time Dr. Dumas had never been in or used the alley in any way. That Dr. Dumas thereafter immediately built himself an entrance from Pine street on the south side of his lot. That no claim or possession of right to use the alley was interposed by Dr. Dumas until the institution of this suit, some time in the year 1925.

The court held that Dumas owned and was entitled to the use of the right of way in controversy, and permanently enjoined and restrained the defendants, the Cummins, from prohibiting, preventing, or obstructing Dumas from the free ingress and egress and use of said right of way, and commanded defendants to remove any buildings located by them on said right of way. The court further held as follows:

"The defendants established adverse possession, but the court holds they cannot claim same against their warranty."

It is undisputed in this record that the appellants, the Cummins, openly and affirmatively denied Dumas, the appellee, the right of way in this alley by constructing a new gate, putting a new lock thereon, and notifying him to stay out of the alley; that Dumas acquiesced in this situation and had not used the ground in controversy as an alley for more than ten years next preceding the filing of this suit. And we think the court correctly held that since the appellants, the Cummins, had been in

open, notorious, hostile, exclusive, and adverse possession of the alley for more than thirteen years, possession for this length of time would vest in them complete title to the easement, unless the warranty deed signed by Mrs. Carrie Purnell (afterwards Mrs. Carrie Cummins), and her former husband, C. R. Purnell, operated to prevent them from asserting claim of title to an easement and right thereto by adverse possession.

Counsel for appellee cites only one case to uphold the decree of the court below, namely, *Mitchell et al.* v. *Woodson et al.*, 37 Miss. 567, and the cases cited therein, in which case Judge HANDY as the organ of the court said:

"It is well settled that if a party covenant to convey with warranty of title, he is incapable of acquiring an interest in the premises in derogation of the rights of his covenantee, and that any title subsequently acquired by him will inure to the use of the covenantee; because he is estopped by his covenants, which run with the land, from setting up any claim against the title thereby assured. *Bush* v. *Cooper*, 26 Miss. 599, 59 Am. Dec. 270; *Jackson* v. *Wright*, 14 Johns. [N. Y.] 193; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. [N. Y.] 568 [528], [49 Am. Dec. 189]; *Jackson* v. *Hubble*, 1 Cow. [N. Y.] 613."

The court held that the defense of adverse possession was a bar to the bill, and the facts in that case are not at all similar to the cases at bar, nor do we understand the rule to be that a grantor, who conveys by warranty deed, is bound to protect the grantee from the result of his own acts, or failure to act, by virtue of the covenants of warranty contained in the deed.

When a new lock was put on the gate, and Dumas was deprived of the right of use of the key and of the alley, the cause of action here begun accrued to Dumas. He had, on the day this hostile claim was set up, the privilege of asserting his right to the use of the alley, which he possessed under his deed. For reasons unknown to us, he acquiesced in this open demonstration of the adverse claim of the Cummins, and continued to acquiesce for

more than ten years. It seems to be quite well settled that a grantor may acquire title or right to lands by adverse possession against his grantee if that possession and adverse holding are in such manner as to notify the grantee of the adverse claim. The rule seems to be aptly stated in 2 Corpus Juris, p. 145, sections 250 and 251, which are as follows:

"250. *Capacity of Grantor to Hold Adversely.*—While, as stated in a preceding section, the continued possession of the land by the grantor thereof after execution of a deed is presumed, in the absence of any showing to the contrary, to be in subordination to the title of the grantee, it is none the less true that the conveyance does not of itself prevent the grantor from acquiring title by adverse possession against his grantee. There is nothing in the relation of vendor and vendee by deed executed and not executory which will prevent the vendor who may remain in possession, or who may afterward take possession from claiming adversely to the vendee and relying on the statute of limitations. The covenant of warranty contained in the deed will not defeat title by limitations acquired after deed. Such title is no breach of the covenant, which cannot be extended to cover future laches of the grantee whereby he loses the title conveyed to him.

"251. *Under What Circumstances Possession Becomes Adverse.* (1) *General Principles Stated.*—It is not necessary that the grantor should first surrender possession to the grantee before asserting an adverse title, and while actual notice that the grantor is claiming title in himself is of course sufficient to set the statute of limitations in motion, express, written, or verbal notice to the grantee that the grantor is claiming title in himself is not necessary. Knowledge of the adverse claim may be brought home to the grantee by acts so open, notorious and hostile as to clearly show that the grantor is claiming adversely, and such acts will suffice to initiate adverse possession by the grantor; and this is true, although he knew

his title to be bad. Nor is it essential to the acquisition of title by the grantor against his grantee that there should be an intervening paper title.''

Dumas abandoned the alley by closing his gate leading thereto after he had been notified to stay out, and by constructing for himself another entrance to his property from Pine street. The subsequent holding of Mrs. Cummins to this alley was not inimical to the covenants of warranty contained in the deed of her former husband, Mr. Charles R. Purnell. We do not think it is necessary for us to decide whether or not Mrs. Cummins was a grantor; but, conceding in this case that she was, she could on these facts acquire title adverse to her grantee if Dumas and the Shady Side Land Company were her grantees. The subsequent acquisition of the title by Mrs. Cummins in no wise conflicted with the covenants in the deed; and she could as effectually acquire title by adverse possession as any other person, provided the proof was clear—and we think the proof is uncontradicted in this case. If she were bound by the warranties in her husband's deed, such warranties could not restore to the grantee the rights which he deliberately lost by his own laches. No reason appears why he could not have filed his suit in 1911, when open, hostile claim was asserted against his right. It may be said that this was only an easement, that the fee was in Mrs. Cummins, and that Dumas only had a right of way, or easement over the property, and a different rule should obtain. In our state, the statute of limitations as to easements is the same; it operates in the same manner, and requires the same length of time as is applied to the land itself. Ruling Case Law, vol. 9, p. 778, section 36, collates the mass of authorities to sustain the view we have announced above, and we quote this apt statement from said section:

"Adverse user is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from

no one, and using the property under a claim of right. It is essential that there be such an invasion of the rights of the party against whom the right is claimed that he would have a cause of action against the intruder, and the prescriptive period does not commence to run until there is such an invasion.''

There was no effort in this case on the part of Dumas to show that he formerly permitted the Cummins to use the alley in the manner in which we have described; and if the burden of proof was on the Cummins to clearly show a use of the right of way, hostile and adversary, they have done so in this case. This record absolutely shows no kind of protest or assertion of right by Dumas during the ten-year prescriptive period, and whatever presumption there might have been in this case is overcome by the undisputed evidence herein. The rebuilding of the gate, the change of the lock, and the notice to the appellee to stay out of the alley was such an assertion of right as authorized Dumas to take notice that his claim of easement was disputed, and that he must resort to the courts for redress, or acquiesce therein for the prescriptive period or his right to such claim was extinguished.

Counsel for the appellee makes some reference in his brief to a ''way of necessity,'' but the proof shows that Dr. Dumas had an alley of his own construction on the south side of his lot, abutting Pine street. No ''way of necessity'' is shown in this case.

We do not think that Mrs. Cummins is prevented by anything in her warranty deed—conceding that it was her deed, which we do not decide—from obtaining title and right of a user to the easement involved here by adverse possession; and adverse possession, we think, is clearly established. Nor do we think the ''way of necessity'' is shown. We also think that the chancellor erred in holding that Dr. Dumas had any right of a user in this easement, and, further, that it was error to grant

147 Miss.—15.

him any relief in this cause. Sections 2454 and 2455, Hemingway's Code, bar this action.

The decree in the court below will be reversed, and a decree here for the appellant vesting right and title in her to the disputed alley as against Dr. Dumas.

*Reversed, and decree here for appellant.*