BATSON v. SMITH, et ux.

Division A. Apr. 16, 1951.

No. 37933 (51 So. (2d) 749)

430

Ben Stevens, for appellant.

Williams & Williams, for appellees.

**Kyle, J.**

Appellant, N. Batson, complainant in the court below, filed his bill in the chancery court of Pearl River County against the appellees, Leander Smith and his wife Louella Smith, defendants in the court below, to remove cloud from his title to a 40-acre tract of land described in the bill of complaint. The appellees answered the bill, and with their answer filed a crossbill against the appellant asserting that they were the owners of a part of the 40-acre tract by virtue of their adverse possession of same for a period of more than ten years, and as cross-complainants asked that their title to that part of said 40-acre tract be confirmed as against the complainant.

The case was heard before the chancellor upon the pleadings and the proof, and a decree was entered dismissing the bill of complaint and confirming the title of the cross-complainants to the portion of the land claimed by them by adverse possession. From that decree this appeal is prosecuted.

The land involved in this controversy is a fractional part of the Northeast Quarter of the Northwest Quarter of Section 10, Township 4 South, Range 15 West. Appellant's claim of ownership was based upon a perfect record title, as set forth in the bill of complaint.

The portion of the 40-acre tract to which the appellees claimed that they had acquired title by adverse possession is a parcel of land off of the south side of the 40-acre tract consisting of a cultivated field containing approximately 14 acres lying immediately north of the south

boundary line of said 40-acre tract and a strip of pasture land adjoining the cultivated field and lying immediately north of the cultivated field and bounded on the north by a reed brake.

The appellees in 1908 purchased the 40-acre tract of land described as the Southeast Quarter of the Northwest Quarter of Section 10, and went into possession of said lands in 1909. Appellees erected a dwelling house on the north side of the 40-acre tract and cleared the land lying around the dwelling house thus erected. A part of the land thus cleared and put in cultivation extended northwardly across the north boundary line of the 40-acre tract described in the deed of conveyance under which the appellees held title, and included the 14-acre cultivated field hereinabove mentioned, which was in fact a part of the Northeast Quarter of the Northwest Quarter of said section. Appellees thereafter erected a substantial fence around their cultivated field, including the 14 acres in the Northeast Quarter of the Northwest Quarter. And appellees also erected a fence along the west side of said property and extended the same northwardly to the reed brake, and by making use of the reed brake as an effective barrier along the north line, the appellees provided themselves with an enclosed pasture which they used for grazing purposes.

In February 1911 the appellees purchased from Lewis E. Prentice and others the 40-acre tract of land described as the Northeast Quarter of the Northwest Quarter of Section 10 and obtained a deed of conveyance to them of that 40-acre tract. Appellees at the same time executed a mortgage deed of trust on said 40-acre tract to secure the purchase money. In November 1917 the appellees reconveyed the said Northeast Quarter of the Northwest Quarter of Section 10 to the Prentices. The consideration of the last mentioned conveyance was the cancellation of the indebtedness still due and owing for the land under the terms of the purchase made in 1911. The deed under which the property was reconveyed to the Prentices con-

tained the words "sell and convey", but there were no covenants of warranty contained therein. In 1920 the Prentices conveyed the land by quitclaim deed to one Eure. Eure thereafter sold the land to other parties and in 1926 appellant's wife, Mrs. Lucile Batson, acquired title to the 40-acre tract, and two years thereafter conveyed the same to the appellant.

When the appellees cleared the land in 1909 or 1910 around the spot where they built their dwelling house, the appellees thought that the land which they were clearing and placing in cultivation was all a part of the original 40-acre tract described as the Southeast Quarter of the Northwest Quarter of said Section 10, which they had purchased in 1908 or 1909, but by mistake, as we have stated above, appellees included in their field and pasture a part of the Northeast Quarter of the Northwest Quarter, lying immediately north of the 40-acre tract which they actually owned at that time. The dwelling house itself was apparently located on the north side of the 40-acre tract which appellees actually owned at that time, but the cultivated field and pasture which appellees made use of thereafter included the south portion of the Northeast Quarter of the Northwest Quarter, which had for its north boundary line the reed brake. The appellees, as we have seen above, owned for a period of about six years, the 40-acre tract described as the Northeast Quarter of the Northwest Quarter and had a record title to the same. After the appellees reconveyed that 40-acre tract to Prentice in 1917, the appellees continued in possession of, and continued to cultivate and make use of that part of the Northeast Quarter of the Northwest Quarter lying south of the reed brake, and continued to occupy the same and claim it as their own; and appellees remained in actual possession of said strip of land, and continued to occupy and make use of said strip of land, claiming it as their own, until the date of the filing of the bill of complaint in this cause. The proof clearly shows that appellees' claim to said parcel of land was

hostile, actual, open and notorious, exclusive and continuous for a period of more than 30 years after the date of the execution of the deed to Prentice in 1917.

The appellant in his brief contends that, upon the execution and delivery of the deed of conveyance of the Northeast Quarter of the Northwest Quarter of Section 10 by the appellees to the Prentices in 1917, the appellees' legal title to the land passed to the grantees, and that appellees' possession thereafter must be regarded as in subservience to the rights of the grantees and their successors in title, and that nothing short of an explicit disclaimer of such relation and a notorious assertion of right in themselves would render their holding hostile and adverse to the grantees and their successors in title.

■■ It is true that the continued possession of the land by the grantor thereof after the execution of a deed is presumed, in the absence of any showing to the contrary, to be in subordination to the title of the grantee. It is nonetheless true that the conveyance does not of itself prevent the grantor from acquiring title by adverse possession against his grantee.

In 2 C. J. S., Adverse Possession, Section 95, at page 653, the ruling is stated as follows: "There is nothing in ■■ the relation of vendor and vendee by deed executed and not executory which will prevent the vendor who may remain in possession, or who may afterward take possession, from claiming adversely to the vendee and relying on the statute of limitations. ■■ The covenant of warranty contained in the deed will not defeat title by limitations acquired after the deed. Such title is no breach of the covenant, which cannot be extended to cover future laches of the grantee whereby he loses the title conveyed to him." And as to the kind of notice of the assertion of right and claim of ownership, it is further stated in 2 C. J. S., Adverse Possession, Section 95, at page 654, that: ■■ "The grantor's adverse possession may be initiated by actual notice of hostility, or by retention of actual possession and exercise

of dominion over the property consistent only with a claim of exclusive and adverse right, either being sufficient in the absence of a statutory requirement of actual notice, and, even where the statute requires actual notice, the grantee is bound to take notice, when brought to his attention, of such subsequent conduct on the part of the grantor as amounts to an assumption of title in his own behalf. Among other acts which have been held sufficient to initiate an adverse holding by the grantor are: Remaining in possession for the statutory period, openly claiming the land as his own; . . ."

In the case of Cummins et al. v. Dumas, 147 Miss. 215, 113 So. 332, 333, the court said: "It seems to be quite well settled that a grantor may acquire title or right to lands by adverse possession against his grantee if that possession and adverse holding are in such manner as to notify the grantee of the adverse claim."

In the case that we now have before us the appellees' adverse possession of the land in controversy for a period of approximately 30 years was clearly established. ▮▮ ▮ The record shows that in July 1927, the appellant's wife, Mrs. Lucile Batson, wrote a letter to the appellees in which she stated that she understood that the appellees had the tract of land under fence and in cultivation, and that she had no objection to the appellees continuing to cultivate and use the land. This letter was introduced in evidence for the purpose of trying to show that appellees' possession of the land was permissive and not hostile. But at the time this letter was written appellees had been in continuous hostile, open and notorious possession of the property for a period of eight or nine years. Appellees ignored the letter, and continued to occupy, use and cultivate the land claiming it as their own for an additional 20 years.

As stated in the case of Daniels v. Jordan, 161 Miss. 78, 134 So. 903, 904, to prevent the running of the statute of limitations in favor of the adverse claimant: "There must be either a suit during the time before the expiration

of the ten-year period or there must be a physical interruption of the adverse possession, or some unequivocal asserting of the claimant's rights, which would enable the person in possession to institute legal proceedings in trespass or otherwise to prevent acts of ownership.'' See also Lott v. Sebren et al., Miss., 48 So. (2d) 626.

We think that the appellees' claim of ownership by adverse possession was fully established by the evidence and that the decree of the lower court should be affirmed.

Affirmed.