## WALKER *v.* McLAURIN

No. 40306          December 3, 1956          90 So. 2d 857

*W. W. Pierce,* Jackson, for appellant.

*John C. McLaurin,* Brandon, for appellee.

Lee, J.

The pleadings and evidence in this case raised the question of ownership of 86 acres of land.

On May 11, 1940, Sylvester J. Walker, for a $20.00 consideration, gave to S. L. McLaurin an option to purchase the land in question within 30 days for a consideration of $500.00. The names of W. V. Loveless and Jack Finch, Sr., appeared on the instrument as witnesses, but both of them were dead at the time of the trial.  On

June 6, 1940, McLaurin exercised his right, under the option, and Walker executed and delivered to him, for such consideration, a warranty deed therefor. The only limitation in the deed was a reservation of the right to remove all buildings on the land within two years. The buildings, except a barn, were sold and removed, and Walker moved away for nearly a year. On his return, he lived in a house adjacent to this land. It appeared that, in 1941, he agreed to pay a small rent for the use of the barn and the land for pasture purposes. He thereupon went into possession, and has occupied the premises ever since.

S. L. McLaurin died on May 23, 1942. His widow, Mrs. Sudie C. McLaurin, under the terms of the will of the decedent, succeeded to a life estate in his property with power to convey a fee simple title. She has since paid all taxes on the land. In the early part of 1955, she made a contract with Robert M. Hogan and Woodrow W. Swilley to cut and remove the timber on this land. When these men, on March 7, 1955, moved their sawmill onto the land for this purpose, Walker forbade them to cut the timber. Thereupon Mrs. McLaurin, on March 10, 1955, obtained an injunction which required Walker to desist from interfering in any way with the cutting and removing of the timber, and it was thereafter cut and removed.

While Walker, in his answer and cross bill, claimed that he thought the option and deed contemplated a mere lease, the proof was overwhelming that he, a fair business man, took the deed which had been prepared by McLaurin's attorney, went with friends to the office of the chancery clerk in Mendenhall before whom he signed and acknowledged the instrument, brought it back and delivered it to McLaurin, and received the consideration of $500.00. In fact, Walker admitted this.

Walker's evidence was further to the effect that, after he discovered that the instrument was in fact a deed, in

the fall of 1944, about September, he went with his cousin, Kelly Walker, to Brandon where he told Mrs. McLaurin, in her home, that "You all haven't got any claim down there (talking about the land). Just forget about it. It is mine. I am claiming it and it belongs to me." He and his cousin further said that Mrs. McLaurin told him that Colonel McLaurin had talked about the matter, and if he had lived, he would have fixed it up. He admitted that he actually paid a little rent about 1941 or 1942 for the use of the barn and land for pasture purposes when he moved back from Utica. On cross examination, he did not remember that he had paid any rent in January 1943. He said that he did not pay any in February 1944, and he was sure that he did not pay any in September 1945.

Mrs. McLaurin did not testify in the trial. She could not do so—she was 81 years of age, had suffered two strokes, was paralyzed, and was confined to her bed, unable to move or speak. In fact, she died on February 10, 1956, after the trial, and this cause has been revived in the names of her successors in title. But R. S. McLaurin, an adopted son, testified that he was present when Walker came to Brandon to see Mrs. McLaurin. He said that she called him to talk to Walker; that Walker's mission was to buy the place back; that when he was informed that they did not wish to sell, he then asked to rent it; and that he did rent it. The witness further testified that Mrs. McLaurin kept books, under his direction, of the funds of the McLaurin Estate, which came into her hands, and he introduced pages 3, 13, and 29 of the book, which showed payments of rent by Walker in the amount of $30.00 each on January 1, 1943, February 25, 1944, and September 10, 1945. Duplicate deposit tickets for the second and third items, supra, from the Rankin County Bank were introduced, and these tickets confirmed the entries in the book. Furthermore, Roy L. Fox, at that time cashier of the Bank, identified the

duplicates and testified that they were in his handwriting. In other words, this evidence disclosed that, on September 10, 1945, less than ten years before this suit was filed, Walker was actually paying rent, and was therefore a tenant on this land.

When, in surrebuttal, counsel called Walker back to the stand and asked if he had any explanation as to why he sent a rent check for the 1945 rent in the sum of $30.00 to Mrs. McLaurin about the 10th of September, 1945, as disclosed from the book and the duplicate deposit tickets, in the face of his previous protestations that he had paid no rent in 1944 or 1945, his reply was: ''Well, in 1945 the McLaurins kept writing me and 'hounding' me about the '42 rent that they had overlooked so I sat down in September and sent them a check and wrote Mrs. McLaurin that 'this is a check for the '42 rent'.''

The final decree permanently enjoined Walker from entering upon the lands, and dismissed his cross bill with prejudice, and from this action he appealed.

The appellant contends here that the decree in both respects, namely, in awarding the relief prayed for in the original bill, and in dismissing the cross bill, was against the overwhelming weight of the evidence.

■■ Of course a grantor may acquire title to land by adverse possession against his grantee, if the adverse possession is in such manner as to notify the grantee of the adverse possession. Batson v. Smith, 211 Miss. 428, 51 So. 2d 749; Cummins v. Dumas, 147 Miss. 215, 113 So. 332.

Many witnesses testified. There was no question but that Walker was actually in possession of the land. The sole issue was whether it was adverse or permissive only.

■■ The learned chancellor was fully warranted in finding that Walker's possession, in the outset, was permissive; that he was a tenant and paid rent as late as September 10, 1945; and that his claimed adverse pos-

session had not equalled the necessary period of ten years before the suit was filed by Mrs. McLaurin on March 9, 1955, and the service of process upon him the next day.

In neither instance was the decree against the great weight of the evidence, and the cause is therefore affirmed.

Affirmed.

*McGehee, C. J.*, and *Hall, Holmes* and *Arrington*, JJ., concur.