431 So.2d 449 (1983)
Ruth M. HEWLETT
v.
Charles A. HENDERSON, et al.
No. 53678.
Supreme Court of Mississippi.
April 13, 1983.
Liston, Crull & Gibson, William Liston, Winona, for appellant.
Dunn & Webb, W. David Dunn, Gholson, Hicks & Nichols, Aubrey E. Nichols, Columbus, for appellees.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Oktibbeha County wherein Ruth M. Hewlett, appellant, sought cancellation of clouds on her title to certain real property, an order requiring vacation of the premises and a monetary judgment against Charles A. Henderson, et al., appellees, for the reasonable rental value of the property involved. Henderson and his wife answered the bill, and by cross bill sought cancellation and removal of Hewlett's claim to the property in themselves.
The property involved in the controversy was originally conveyed to Ralph Hewlett by J.A. Long, Sr., by warranty deed dated March 27, 1951, and subsequently recorded in 1954. J.A. Long, Sr. subsequently conveyed property lying to the east of that conveyed to Hewlett to L.E. Spruill by warranty deed dated February 22, 1966. The deed to Spruill likewise included a portion of the property conveyed to Hewlett and *450 has subsequently been developed into a subdivision. The Hendersons purchased Lot 56 of Part 12 of the Green Oaks Subdivision upon which their house was constructed. They have resided thereon since 1973. Sixty-one and two-tenths percent of their lot, including their entire home is situated in the disputed area. From a decree dismissing Mrs. Hewlett's bill of complaint and a finding of adverse possession for a period of over thirty years, she appeals. We affirm.
The parties to this appeal own adjoining real property in Starkville. They have a common source of title to their respective tracts from J.A. Long, Sr.
Appellant's ex-husband, Ralph Hewlett, purchased approximately twenty acres of land in three separate transactions. Tracts I and II were purchased from J.A. Long, Sr. on October 12, 1948, and July 31, 1949. Neither of these tracts of land is involved in the present controversy.
On March 27, 1951, Ralph Hewlett purchased the third tract of land from J.A. Long, Sr., which included within the confines of the deed the property now in question. Appellant subsequently obtained title to all three tracts by deed dated August 13, 1976, as part of a property settlement agreement when she and Ralph Hewlett were divorced. This deed did not convey by description the disputed area; however, the deed contained language to the effect that the grantor intended to convey all of his property situated in Section 4, Township 13 North, Range 13 East, consisting of twenty acres or more. Apparently, the description used on this deed was taken from a deed of trust in favor of First Federal Savings & Loan Associated and dated May 29, 1954, which also failed to include the disputed area. Two other deeds of trust were also executed on the property to Dewitt Mississippi Hatchery and Ralston Purina Company dated May 20, 1960, and to Security State Bank dated September 22, 1976. Neither included by description the property presently involved in this litigation.
On November 12, 1979, after the present controversy arose, Ralph Hewlett executed a quitclaim deed to appellant which described the three tracts according to the legal description contained in the three warranty deeds from J.A. Long, Sr., thereby including the disputed property. The disputed area consists of approximately three acres.
On February 25, 1966, J.A. Long, Sr., conveyed unto L.E. Spruill approximately eighty-nine acres immediately to the east of appellant's property including the disputed area. Spruill began to develop the property into Green Oaks Subdivision in 1966, beginning on the east side and generally working toward the west. Part 12 of the subdivision was not platted until October 6, 1972. The first improvements in this area were made approximately six to eight months prior to the plat being filed. Appellees purchased Lot 56 of Part 12 of the Green Oaks Subdivision on August 16, 1973, and moved into their new home shortly thereafter. They have resided thereon continuously since their purchase.
Of the .4882 acres in Lot 56, .3 acre lies within the disputed area, including all of appellees' home. Despite this fact appellees were able to obtain financing for the purchase of their home whereby they executed a deed of trust to Union Planters to secure the purchase price of their home. Appellees have also paid the taxes on their property since its purchase.
The facts disclose that appellant has resided on Tract I since 1948. Sometime after the purchase of Tract III, Ralph Hewlett constructed a fence on the eastern portion of Tract III, running in a northerly direction, which was thereafter for all purposes treated as the eastern boundary of Tract III. Ralph Hewlett testified that at the time he purchased Tract III, he agreed for Long to continue using the disputed area upon which his crops extended. The fence was merely constructed to keep cattle from crossing into Long's field and vice versa.
Ralph Hewlett never demanded the use of this property following the alleged agreement nor has his family, including appellant, made any use of the disputed property. Up until 1976 Hewlett contended there had been no use of the disputed area *451 different from that for which Mr. Long was granted permission to use the property. Mr. Long's son, J.A. Long, Jr., asserted, however, that he and his father had used the property in their business until 1966 and to the best of his knowledge it was owned by his father.
After Spruill purchased the property in 1966, he planted pine seedlings in the encroached area in 1967 and bushhogged the property approximately two years later. Construction, however, was not begun in the disputed area until 1972. His intention was to claim all the property up to the fence after his purchase. Although the appellees' home was constructed in the disputed area in 1973, it was not until approximately 1979 that appellant was informed by her son of the possible encroachment.
After a lengthy hearing and numerous exhibits, the learned chancellor found that Spruill's possession, occupancy and use, under color of title, of Part 9, Green Oaks Subdivision, extended to all lands embraced in his deed under which he claimed. The court found as a fact that the proof established immediate use and occupancy of the whole purchase under the 1966 deed as substantiated by the planting of pine trees and bushhogging of the premises by Spruill. The chancellor also found that the testimony of J.A. Long, Jr. established the use of the disputed area for a period of thirty years and also repudiated the permissive use theory of Ralph Hewlett. Finally, the court held appellant would be unjustly enriched if she were permitted to evict appellees as prayed for. A final decree was entered accordingly.
I. Did the chancellor err in finding that there was adverse possession of the land in dispute and that such possession had been actual, hostile, notorious, exclusive and continuous since 1951?
Appellant contends that the chancellor erred in disregarding the testimony of Ralph Hewlett, finding such testimony not believable as credible evidence as to the permissive use of the disputed area by agreement between Hewlett and Long, Sr. The permissive use theory upon which appellant relied more or less rested upon the testimony of Ralph Hewlett, for although appellant testified she was aware of such an agreement at trial, she denied any knowledge of such in her deposition although she later amended her answers thereto, asserting she had been aware of such an agreement.
As a general rule, permissive possession of lands, even if Long continued, does not confer title in the person in permissive possession until a positive assertion of a right hostile to the owner has been made known to him. Eady v. Eady, 362 So.2d 830 (Miss. 1978); St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740 (Miss. 1970); Newman v. Smith, 226 Miss. 465, 84 So.2d 512 (1956); Williams v. Patterson, 198 Miss. 120, 21 So.2d 477 (1945); and Adams v. Guice, 30 Miss. 397 (1855). Continued possession of land by the grantor thereof after the execution of a deed is presumed, in the absence of any showing to the contrary, to be in subordination to the title of the grantee. However, the conveyance does not prevent the grantor from acquiring title by adverse possession against his grantee. Batson v. Smith, 211 Miss. 428, 51 So.2d 749 (1951); Cummins v. Dumas, 147 Miss. 215, 113 So. 332 (1927); Davis v. Bowmar, 55 Miss. 671 (1878). As stated in Batson:
In 2 C.J.S., Adverse Possession, Section 95, at page 653, the ruling is stated as follows: "There is nothing in the relation of vendor and vendee by deed executed and not executory which will prevent the vendor who may remain in possession, or who may afterward take possession, from claiming adversely to the vendee and relying on the statute of limitations. The covenant of warranty contained in the deed will not defeat title by limitations acquired after the deed. Such title is no breach of the covenant, which cannot be extended to cover future laches of the grantee whereby he loses the title conveyed to him." And as to the kind of notice of the assertion of right and claim of ownership, it is further stated in 2 C.J.S., Adverse Possession, Section 95, at *452 page 654, that: "The grantor's adverse possession may be initiated by actual notice of hostility, or by retention of actual possession and exercise of dominion over the property consistent only with a claim of exclusive and adverse right, either being sufficient in the absence of a statutory requirement of actual notice, and, even where the statute requires actual notice, the grantee is bound to take notice, when brought to his attention, of such subsequent conduct on the part of the grantor as amounts to an assumption of title in his own behalf. Among other acts which have been held sufficient to initiate an adverse holding by the grantor are: Remaining in possession for the statutory period, openly claiming the land as his own; ..."
In the case of Cummins et al. v. Dumas, 147 Miss. 215, 113 So. 332, 333, the court said: "It seems to be quite well settled that a grantor may acquire title or right to lands by adverse possession against his grantee if that possession and adverse holding are in such manner as to notify the grantee of the adverse claim."
(211 Miss. at 434-35, 51 So.2d at 751-52).
Appellant relies upon the general principle that the undisputed testimony of a witness sworn to and not so unreasonable as to be unbelievable and adverse to actual facts, must be taken by the trier of fact as true. See Edwards v. Mid-State Paving Co., 300 So.2d 794 (Miss. 1974). Appellant argues that Hewlett's testimony was neither disputed nor so unreasonable as to be unbelievable, nor was it adverse to the actual facts.
After a careful examination of the record and exhibits thereto, we are unpersuaded by appellant's argument. In our opinion, the testimony of Ralph Hewlett was disputed by the testimony of J.A. Long, Jr., as well as by the physical facts and the parties' own conduct. We reach this conclusion for following reasons: Hewlett's testimony as to the permissive use theory was directly contradicted by the testimony of J.A. Long, Jr. that he was unaware of any such agreement between his father and Ralph Hewlett. According to Long, his father owned the property in question until 1966. Hewlett constructed a fence after purchasing Tract III which excluded the disputed area and was for all purposes regarded as Hewlett's boundary line thereafter; Hewlett, in his dairy business only used the property to the west of the fence he constructed, thereby excluding the disputed area from use. When J.A. Long, Sr. had his property surveyed in 1966 prior to the sale to L.E. Spruill, Long pointed out the fence line constructed by Hewlett as the western boundary of his property. Finally, Hewlett mortgaged all three tracts of his property on three separate occasions. None of the descriptions contained in these deeds of trust included the property involved in the instant controversy. These factors were more than sufficient to cast doubt upon the credibility of Hewlett's testimony as to the permissive use theory. The chancellor, as the finder of fact, was therefore justified in rejecting the permissive use theory upon which appellant relied.
Upon this record, we cannot say the chancellor was manifestly wrong in finding that appellees had acquired title to the property in question by adverse possession for the statutory period as prescribed in Mississippi Code Annotated section 15-1-13 (1972).
II. Did the chancellor err in finding that appellant's claim was barred by the doctrine of unjust enrichment?
Appellant argues that one's failure to assert record title does not operate so as to estop the record title holder from later asserting a claim to the property. Because of this, appellant contends the doctrine of unjust enrichment was erroneously applied in the case sub judice. Appellant relies on Collier v. King, 251 Miss. 607, 170 So.2d 632 (1965), wherein this Court stated:
And equity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, by examining the land records or otherwise. One about to purchase land or make improvements thereon should ordinarily inquire into the public records, and he may not claim the *453 benefit of an estoppel when he does not do so even if the true owner remains silent at a time when he knows another is about to purchase the land or make improvements thereon. Craft v. Everett, 237 Miss. 360, 115 So.2d 133 (1959). But while the owner may not be required to act or speak regarding his title which is of public record, if he does speak or act he must do so consistently with his recorded title, and if such owner misleads another by affirmative statements in derogation of his record title and such other person in reliance thereon purchases the property or makes improvements thereon, he is estopped from asserting his legal rights against such other. Brock v. Kelly, 208 Miss. 323, 44 So.2d 452 (1950). cf. Howie v. Baker, 232 Miss. 661, 100 So.2d 113 (1958). (250 Miss. at 611-12, 170 So.2d at 634-35)
See also Roberts v. Bookout, 162 Miss. 676, 139 So. 175 (1932).
This case is somewhat similar to Martin v. Franklin, 245 So.2d 602 (Miss. 1971). There Griffin owned property to the north of an old road while Martin owned the property to the south of the road. After the highway department straightened the road, Martin owned a tract lying north of the new portion of the highway and south of the old roadway, while Griffin owned a tract lying south of the new portion and north of the old roadway. Griffin and Martin subsequently verbally swapped properties, which was void under our statute of frauds, whereupon Martin would own the property to the north of the Utica-Cayuga Road and Martin all the land to the south. Griffin subsequently conveyed a portion of the property south of the road which Griffin claimed as a result of the verbal swap with Martin. Franklin, the grantee, thereupon constructed a new home to which Martin claimed title upon completion. This Court stated:
With full knowledge of his own title to the land in dispute, Martin stood by and saw the survey being made of the Franklin lot and later the construction by Franklin of a home thereon. Franklin acted in good faith believing he had title. Martin was under a duty to make known to Franklin the true state of the title when Franklin began making improvements on the lot. He stood by until the house was completed and then made claim to it. In Quin v. Northside Baptist Church, 234 Miss. 51, 105 So.2d 151 (1958), this Court said, in quoting from an earlier case, that it is a rule of almost universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which call for notice or protest cannot afterwards assert his own title against such person.
(245 So.2d at 605-05)
Here, appellant sat idly by while appellees' home was constructed on the disputed property and made no claim thereto until six years after the improvements had been made. The evidence clearly established that neither appellant nor her predecessor in title ever exercised any dominion or control over the land in question. Under the facts in this case, appellant by her own action or inaction is estopped from asserting her title to the disputed area.
Based on the foregoing this cause is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, BOWLING and ROBERTSON, JJ., concur.
PRATHER, J., not participating.