453 So.2d 703 (1984)
Martha D. SKELTON
v.
Abbie LEWIS and Leroy Lewis.
No. 54328.
Supreme Court of Mississippi.
July 25, 1984.
*704 Landman Teller, Jr., Teller, Chaney & Rector, Vicksburg, for appellant.
Mark W. Prewitt, Prewitt & Courteau, Vicksburg, for appellees.
Before WALKER, P.J., and BOWLING and HAWKINS, JJ.
BOWLING, Justice, for the Court:
This is an adverse possession case pursuant to the ten-year adverse claim requirements under Mississippi Code Annotated, Section 15-1-13 (1972). This case, however, raises different issues from the usual adverse possession case brought before this Court. The question for decision here is the adverse possession requirements necessary to exist before a grantor may claim real property from his grantee; that is, real property that was conveyed under the terms of the deed of conveyance. As hereinafter discussed, we hold that the grantor has a greater burden in proving adverse possession to keep or take away property conveyed to his grantee by proper deed and with proper description.
In 1926 David Lewis and wife, Abbie Lewis, purchased as joint tenants a tract of land in Warren County in the Oak Ridge area from Felix and Bessie Grant. In 1946 the Lewises acquired an additional tract of land from the Grants comprising approximately 147.2 acres. This second purchase was contiguous to the first purchase and was south of the first purchase. At that time, this second purchase was surveyed by W.E. Mallette & Associates, Engineers, and a plat prepared for the Lewises.
On July 12, 1960, David and Abbie Lewis [David, the husband, now being deceased] conveyed by warranty deed the second Grant purchase to Alan G. and Martha B. Skelton. At the time the sale was consummated, the Lewises delivered to the Skeltons the plat of the property being conveyed that was prepared by Mallett & Associates when the property was purchased by the Lewises in 1946. This plat clearly set out the property lines.
The Oak Ridge area, where all of the property is located, consists of steep hills and hollows, and except for certain low areas it is primarily fit for raising trees and holding the world together. During the time between 1926 and 1946, the Lewises had constructed a number of "cross fences" that zig-zagged along the tops of ridges in the entire area owned at that time by them. At the time of the purchase and sale between the Skeltons and Lewises, one of these cross fences ran generally in an easterly-westerly direction across the northwest part of the property conveyed by the description. This resulted in an area of approximately 10-12 acres between the conveyed northern boundary of the Skelton property and the zig-zagging cross fence. This 10-12 acre area is that in controversy in the present suit. Appellant [Mr. Skelton died in 1979] claims the property to the north boundary line set out in her deed description and shown on the Mallett plat delivered to her at the time of the conveyance in July 1960. Appellee Lewis contends that she owns by adverse possession the 10-12 acre area north of the zig-zagging cross fence and south of the admittedly northern line of the property conveyed to the Skeltons. The question then is whether or not the Lewises took away or retained part of the land they conveyed to the Skeltons by adversely claiming that part subsequent to the conveyance.
*705 The status of the legal proceedings is as follows: Appellant Skelton filed her bill of complaint in the Chancery Court of Warren County requesting that appellee Lewis be enjoined from using the area in question. Lewis filed a cross bill claiming ownership of the land by adverse possession. The chancellor, after hearing evidence, dismissed the original bill of complaint and granted the prayer for relief in the cross bill by holding that Lewis owned the tract of land by adverse possession. His findings shall be discussed further later in this opinion.
It would serve no purpose to lengthen this opinion by setting out every detail of the evidence under which appellee Lewis claims title by adverse possession. There was some testimony regarding ten or twelve cows of the Lewises' having access to the area north of the zig-zagging ridge fence. There is testimony about repairs being made to the fence by both parties. The Skeltons did not place a fence along the northern boundary of the property conveyed to them. Mrs. Skelton stated that the type of land and its use prevented the expense of building such a fence, unless necessary. The record shows the property as hereinbefore indicated to be extremely hilly and woody, with the main benefit to be derived being providing shade to cows in the summertime. There was testimony that the Skeltons were interested in keeping the already built zig-zagging ridge fence south of the line in reasonably good condition so that there would be no interference with a small plot of cultivatable land down in the hollow.
There is no testimony to justify a finding that the Skeltons knew that the Lewises were claiming the Skelton's property to the zig-zagging ridge fence until February 1977 when the Skeltons, after a phone call by Mrs. Lewis, went to the area to see about purchasing further land from Mrs. Lewis. The evidence is abundant that until that day, the Skeltons did not know that Mrs. Lewis was claiming their ten to twelve acres south of the north line conveyed to them by the Lewises. Upon ascertaining from Mrs. Lewis that she was so claiming, the Skeltons refused to negotiate further.
Shortly after the visit described above, the Skeltons went to the expense of constructing a fence along the northern boundary line of the land they had received by warranty deed, proper description and plat in July 1960. Two years after this fence was built, it was destroyed by Mrs. Lewis' grandson. Shortly after this act, Mrs. Skelton filed her suit for injunctive relief.
The chancellor rendered his opinion by letter addressed to the attorneys for the parties. He related the history of the land acquired as hereinbefore set out. Appellee had attempted to establish timber cutting as a part of her claim of adverse possession. The chancellor held as a fact that "the Lewises cut and sold timber at least twice, but the proof is inadequate to establish any actual cutting in the area south of the property line but north of the fence." The chancellor discussed appellant Skelton's testimony that everyone knew the "cross fence" was not the line, but since the principal use of the area was for growing trees, they had no reason to object to occasional pasturage of the area.
The chancellor discussed the undisputed fact that since the deed of conveyance in July 1960, the Skeltons had paid the taxes on the subject property each year. Never had taxes been paid on the property by the Lewises.
The chancellor seemed to base his factual determination on the fact that the Skeltons did not place a fence along the true northern boundary of the property they purchased and, in effect, held that they were not diligent in failing to do so. We emphasize the finding of the chancellor that in 1977, after appellee had contacted the Skeltons to sell more land, it became apparent that the Lewises were claiming some property south of the Skelton purchase boundary and negotiations terminated.
The chancellor based his opinion on the cases of Batson v. Smith, 211 Miss. 428, 51 So.2d 749 (1951) and Alexander v. Hyland, 214 Miss. 348, 58 So.2d 826 (1952).
*706 At least a half dozen cases from this Court over the years have held that under certain circumstances and proof thereon, a grantor may retain a part of his conveyed property by adverse possession against his grantee. We unhesitatingly say, however, that the proof in order to establish adverse possession in such a situation is far greater than the average adverse possession case. Here we had the Lewises giving the Skeltons a warranty deed to property set out by metes and bounds description and at the same time a plat conforming to the warranty deed metes and bounds description was delivered to the Skeltons. The Lewises now, in effect, say that we do not mean what we said in the warranty deed or the plat that we had made, but we claim to a zig-zag, crooked fence that has no relation whatever to the straight northern boundary of the property conveyed.
In 3 Am.Jur.2d Adverse Possession § 11, page 89, we find the following:
[W]here the original entry is in subordination to the title to the true owner, the possession so taken only becomes adverse when the claimant sets up title in himself, and the running of the statute must date from that time... .
In 3 Am.Jur.2d Adverse Possession, §§ 163-64, pages 245-7, we find the following:
Ordinarily, where a grantor continues in possession of the land after the execution and delivery of the deed, his possession will be that either of tenant or trustee of the grantee; he will be regarded as holding the premises in subserviency to the grantee. Thus the occupation of land by a grantor, after conveyance made, is presumed to be under, and in subordination to, the legal title held by his grantee, for he is ordinarily estopped by his deed from claiming that his holding is adverse. However, this presumption is rebuttable... .
§ 164... . Thus it is well settled that a grantor of land may originate a possession adverse to this grantee, and that such possession differs from that originated by a stranger only in requiring stronger proof to sustain it. This is true even though the grantor conveys the land by a general warranty deed. In order to make the plea of limitation effectual in a case where the grantor remains in possession, using the land as he did before his deed, he must show some notorious act of ownership over the property, distinctly hostile to the claim of the grantee. The hostility of the grantor's holding must be brought to the grantee's attention in such a manner as to put the latter on notice of the grantor's intention to occupy the property in his own right. ... The refusal by a grantor in possession of the premises to surrender them to the grantee is notice to the latter that he must proceed to vindicate his rights, and if he delays in doing so beyond the statutory period his deed cannot prevail against his grantor's adverse possession. (Emphasis added).
In the case of Walker v. McLaurin, 229 Miss. 425, 90 So.2d 857 (1956), we recognized that a grantor may acquire title to land by adverse possession against his grantee if the adverse possession is in such manner as to notify such grantee of the adverse possession.
In Cummins v. Dumas, 147 Miss. 215, 113 So. 332 (1927), we approved title by adverse possession of a grantor of an alley-way where the adverse possessor had constructed buildings at the ends of the alley-way and had built gates and locked them.
In Evans v. Shows, 180 Miss. 518, 177 So. 786 (1938):
The rule to the effect that when a person makes a deed of conveyance of land he cannot by remaining in possession claim by adverse possession in hostility to his own deed has been modified or departed from by our court to the extent, and to the extent only, that he may bring notice or knowledge of such averse claim to the attention of his vendee, and henceforth claim the same by adverse possession. The record fails *707 to show that this was done by the grantors in the present case.
We carefully have studied the cases of Batson, supra, and Alexander, supra, relied on by the chancellor and find that the facts in each of those cases require a holding that appellee Lewis did not meet the burden of proof. We therefore hold that when a grantor of real property conveyed by warranty deed a completely and adequately described parcel of property, and confirmed that property conveyed by a plat conforming to the deed, as was done here, in order for the grantor to retain part of that property and acquire it by ten years adverse possession, he has the burden of proving beyond a reasonable doubt that the grantee had notice that the grantor was saying in effect, "Yes, I conveyed it to you, but I did not mean it. I am keeping a part." No doubt should exist.
In making the above pronouncement, we, of course, are referring to the evidence in the case sub judice. We, however, go further and state that in any case where the grantor claims by adverse possession all or part of the property conveyed, the proof of actual notice of that possession by the grantor to the grantee should be stronger than in the normal adverse possession case and should be clear beyond a reasonable doubt. The evidence should reveal that the grantee has been ousted from the property he received under the conveyance.
We, therefore, reverse and render the cause and grant judgment here for the appellant, enjoining appellee from claiming any property south of the northern boundary line conveyed by the deed of July 12, 1960. Title to such property conveyed in the deed is confirmed in appellant Skelton.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, and SULLIVAN, JJ., concur.